In the Matter of the Estate of Anna C. Roth, Deceased, Plaintiff-Appellee, v. Henry R. Roth, Defendant-Appellant.

Gen. No. 67–132.

Second District.

June 20, 1968.

Murphy & Griffin, of Aurora, for appellant.

Matthews, Jordan, Dean & Suhler, of Aurora, for appellee.

MR. JUSTICE SEIDENFELD delivered the opinion of the court.

This is a citation proceeding by the Administrator, John Roth, for the recovery of the proceeds of four savings accounts alleged to have been the property of Anna C. Roth, hereinafter referred to as the decedent. After hearing, the court entered an order directing the respondent, Henry R. Roth, decedent's son, to pay over to the estate the sum of $11,805.16, plus increments. It is from this order that respondent appeals.

The respondent contends that he is the owner of the monies in the joint accounts by reason of an absolute gift of the funds by the decedent prior to her death. However, the respondent contends that in the alternative, in the event there is no inter vivos gift, the evidence establishes a trust of the funds not subject to the claim of the petitioner.

The decedent, Anna C. Roth, died intestate on August 17, 1964, leaving as her survivors, six children, includ-

ing the respondent and petitioner. Her husband predeceased her having died in 1956. The decedent, by reason of her husband's death, received certain joint tenancy property by which she created four accounts in three Savings & Loan Associations in Aurora. It is undisputed that all sums used to create these accounts were monies solely and only of the decedent.

The accounts were in the names of Anna C. Roth or Henry R. Roth, or John Roth as joint tenants with right of survivorship. The passbooks were issued and the Savings & Loan Agreements were signed by all the parties. While the agreements were not in identical language, each contained, in substance, the usual language including the right of withdrawal in each of the parties, and survivorship.

In the Home Building & Loan Association, Account No. J690 was opened on March 11, 1957, with a deposit of $15,000 and Account No. 0-3460 was opened on January 2, 1960 with a deposit of $7,500. On March 2, 1957, Account No. 0-6613 was opened in the Improvement Federal Savings Association with a deposit of $8,450. On March 21, 1960, Account No. 16909 was opened in the Aurora Savings & Loan Association with a deposit of $689.31.

On May 2, 1964, the respondent withdrew the balance of Account No. J690 in the amount of $2,016.19. On July 18, 1964, he withdrew from Account No. 0-3460, the balance of $7,668.75, and on the same date he withdrew from Account 0-6613, the balance of $611.65. On July 23, 1964, the respondent withdrew from Account No. 16909, the amount of $139.09, leaving a balance of $5. This account showed a balance of $1,508.57 as of November 22, 1966, representing additional deposits of $50 each made by Frank Roth, a child of the deceased, as payments on a note owed to the deceased.

In 1956, the decedent suffered a heart attack. At that time, the respondent, who is the only unmarried child of

six children of the decedent, left St. Joseph's College, where he was then studying in the seminary, to take care of his mother. From the year 1956 to the date of her death, the only child of the six to take care of the decedent and to reside with her was the respondent. In 1958, the respondent took sole possession of the passbooks and when the subsequent accounts were opened, the respondent had possession of those passbooks.

In 1957, the decedent expressed the intent that the funds in the joint accounts were to be used for her if she needed it when she was sick or if she otherwise needed the funds for her support during her lifetime, and upon her death the proceeds were to be divided equally among her children by the surviving joint depositors to make sure there would be no necessity to probate the funds in her estate. She desired such an arrangement whereby the funds would be immediately accessible to the children in order to avoid lengthy probate proceedings. The estate of the decedent's husband had been in probate a number of years and the decedent wished to avoid such a complication.

The testimony as to decedent's intention in opening the accounts did not vary materially. John Roth testified that decedent stated that her purpose in setting up the account was:

> "So when she died, we were supposed to see the money was equally divided among the heirs . . . among her children."

Henry Roth testified that when the accounts were first created, "it was just a matter of convenience." Both sons testified that when the accounts were created, the withdrawals from the accounts were to be used for their mother's expenses during her lifetime.

However, in 1962, there was testimony that the decedent expressed a different intention as to the joint

accounts when she visited her son, Carl Roth, in Florida. In the late spring or early summer of 1964, the deceased consulted her attorney for the preparation of a will which, however, was never executed. In discussing her assets with the attorney, the deceased never mentioned the joint accounts but spoke only of her property as being interest in real estate. The deceased's attorney testified that the deceased stated she had "special affection" for the respondent because he stayed home on her behalf and cared for her. At this time, the balance of the joint accounts was approximately $10,000. At the time of her hospitalization which preceded her death, the decedent allegedly told the respondent, "You get that money out of the bank and hold on to it or he is going to grab everything and you won't have a roof over your head," and it is acknowledged that when the decedent referred to "he" she was referring to John Roth, the petitioner. She further stated, "that I want the boys to get the money and I want Henry and Carl to have the money and have the home."

The deceased from the day of her heart attack in 1956 until the date of her death of August 17, 1964, remained continuously unemployed receiving income from a pension and monthly rentals. During this period, the respondent alone made withdrawals determining the amount of any withdrawal which was given to the deceased for her use.

There is no claim of fraud or conversion of any of the funds which the respondent withdrew prior to May 2, 1964, and therefore, the amount in dispute is $11,805.16, plus increments.

The court's order found that the four accounts in the Savings & Loan Associations were executed in joint tenancy and were set up as a matter of convenience; that by reason of the respondent residing with his mother for many years, he stood in a fiduciary relationship with his mother, and that the burden of proof is on the respondent, Henry R. Roth, to establish a gift inter vivos to him by

clear and convincing proof; that all monies belonged to the decedent when the accounts were established and that the respondent had failed to meet the burden of proof of a gift inter vivos to himself and by reason thereof the monies in the joint tenancy accounts belong to the estate; and ordered the respondent to pay over the monies together with increments to the administrator.

The creation of joint accounts in regard to banks and savings and loan associations is expressly governed by statute, to wit, Ill Rev Stats 1955, c 32, § 770, as amended, which contains broad and comprehensive provisions for the creation of rights of survivorship in the case of capital accounts. By statutory provisions referred to, the Legislature has expressly provided for the creation of survivorship accounts in savings and loan associations and has prescribed the method by which accounts can be set up. It is not contested that the joint accounts in the case at bar met the statutory provisions of the statute.

Although joint ownership is set up in conformity with statutory provisions, a court of equity is not thereby foreclosed from looking behind the form of transaction and determining questions of the real and beneficial interest as between the parties. Intent is still held to be controlling, but when the parties have expressed their intent by written agreement by clear and definite terms, the contract cannot be varied or altered unless there is clear and convincing evidence that a gift was not intended. Frey v. Wubbena, 26 Ill2d 62, 70, 185 NE2d 850 (1962).

The court in Murgic v. Granite City Trust & Savings Bank, 31 Ill2d 587, 202 NE2d 470 (1964), on Page 591 said:

"We hold that an instrument creating a joint account under the statutes presumably speaks the whole truth; and in order to go behind the terms of the agreement, the one claiming adversely thereto

has the burden of establishing by clear and convincing evidence that a gift was not intended. This burden does not shift to the party claiming under the agreement."

Applying the foregoing principles to the original account, we come to the conclusion that the presumption of donative intent of the decedent, Anna C. Roth, in creating the joint account was not overcome, but that a gift was intended to all her children as to any of the monies in the account upon her death. The decedent parted with exclusive dominion and control over the subject of the gifts when she voluntarily placed ownership in herself and others through survivorship arrangements. The testimony as to her desires and intentions did not make the gifts void as testamentary dispositions. Frey v. Wubbena, supra, 71, 72; In re Estate of Mueth, 33 Ill App2d 449, 451, 179 NE2d 695 (1962).

The joint tenants, to wit, the respondent and Henry R. Roth, accepted the funds as fiduciaries with an obligation arising out of the confidence reposed in them by their mother to faithfully follow her instructions. We find that the funds in question withdrawn by Henry Roth become impressed with that resulting trust. In re Estate of Habel, 88 Ill App2d 194, 231 NE2d 616.

In Hanley v. Hanley, 14 Ill2d 566, 152 NE2d 879 (1958), the court said on page 571:

"A resulting trust arises by operation of law and is founded on the presumed intent of the parties ascertained from their acts and attendant facts and circumstances, and usually comes into existence where one person furnishes the consideration, or an aliquot part thereof, for the purchase of property while the title is, taken in the name of another, . . . , and it arises, if at all, at the instant legal title is taken and vests. . . . Acts of the alleged trustee

or equitable owner subsequent to the taking of the title, have no bearing upon the question of whether a resulting trust was raised. . . . To justify the declaration of such trust, the evidence must be clear, convincing, and unmistakable. . . ."

■ Further, in determining whether the requirements for a resulting trust are present, it is proper to take into account the family relationship of the parties and the informal character of their arrangement. Merschat v. Merschat, 1 Ill App2d 429, 437, 117 NE2d 868 (1954).

The petitioner alleges, and the trial court found, that the funds were set up for the convenience of the deceased. With this we cannot agree. The accounts were set up over a period of eight years and it was the intention of the deceased to avoid probate. If the accounts were set up merely for convenience, the deceased would intend no gift. The petitioner in support of his position cites In re Estate of Schneider, 6 Ill2d 180, 127 NE2d 445 (1955) as authority that these accounts were set up for convenience. It is noted that in Schneider, the decedent said: "I want your name on these bank accounts so that in case I am sick you can go and get the money for me." This is clear and convincing evidence that no gift of any beneficial interest in the account was intended. In the case of In re Estate of Lackie, 51 Ill App2d 156, 159, 201 NE2d 180 (1964), the decedent telephoned the respondent to come and stay with her because she was not feeling good. The decedent thereafter opened up joint accounts with her half-sister, the respondent. Upon her death, the court held that even though the respondent took care of the decedent during her last illness, the account was not set up for convenience but that the decedent intended to create a joint account with the right of survivorship.

■ ■ Respondent, however, argues that at a later date the donor changed her intention and made an

inter vivos gift of the accounts to him. We believe that the trial court held correctly that respondent failed to establish a gift inter vivos to him by clear and convincing proof. The burden of proof was upon him to show the later gift. This is not to be confused with the burden of proof to overcome the presumption of a gift based upon the joint account as stated in Murgic, supra. The alleged statements of decedent in 1964 do not show an intent to make a gift inter vivos to the respondent, but show to the contrary that the money was not intended as a gift solely to respondent. Pocius v. Fleck, 13 Ill2d 420, 427, 428, 150 NE2d 106 (1958).

Finally, it has been contended that the Probate Court did not have jurisdiction to determine title to the funds under the citation proceedings. We find such jurisdiction pursuant to section 185, c 3, Ill Rev Stats 1967; In re Estate of Peters, 34 Ill2d 536, 539, 217 NE2d 3 (1966).

The order of the Circuit Court is therefore reversed and the cause is remanded with directions to take further proceedings consistent with this opinion.

Reversed and remanded with directions.

ABRAHAMSON, P. J. and DAVIS, J., concur.