*In re* ESTATE OF JOSEPH J. WAITKEVICH, Deceased.—(MICHAEL B. SUSMAN, Attorney-in-Fact for Ionas Ruzas, Petitioner-Appellant, *v.* WEST PULLMAN SAVINGS & LOAN ASSOCIATION *et al.*, Respondents-Appellees.)

(No. 59224;

First District (3rd Division)—January 9, 1975.

Michael B. Susman and Robert J. Krull, of Chicago, for appellant.

Gomberg & Sharfman, Ltd., of Chicago (David L. Gomberg, Robert J. Sharfman, and Ronald S. Gertzman, of counsel), for appellees.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

This is an appeal from an order of the circuit court of Cook County dismissing a verified petition for citation for recovery of assets of the estate of Joseph J. Waitkevich. Petitioner is Michael B. Susman, attorney-in-fact for Ionas Ruzas, nephew and heir at law of the decedent. Respondents are West Pullman Savings and Loan Association and Felix Palilunas, the alleged beneficiary of a payable on death savings account

created by decedent at West Pullman. At the conclusion of a hearing on the petition, the court found that the funds in the account belonged to Palilunas. Only the respondent West Pullman has filed an answering brief. Palilunas has filed an appearance but has not filed an answering brief.

The pertinent evidence is undisputed. On or about October 9, 1954, Waitkevich opened an individual savings account at West Pullman. Among the documents he signed at that time were a signature card specifying him as an individual holder and a ledger card which would record his future deposits and withdrawals. When Waitkevich died on January 30, 1970, the amount in his savings account was $11,524.79. Sometime subsequent to his death, West Pullman paid out the savings to Palilunas. At oral argument, counsel for West Pullman stated, however, that the savings were actually transferred to Palilunas' account at West Pullman and that except for decedent's funeral expenses, he believed that the remainder of the funds have remained in a frozen status awaiting the outcome of this appeal.

Casmire Deuruski, executive vice-president of West Pullman and the person in charge of the association's records, testified that he transferred the funds from Waitkevich's account to Palilunas' after he had seen a signature card for an individual account bearing decedent's signature and containing the typed words "Payable on death, Felix Palilunas." According to the witness, the signature card has been lost or misplaced. Although Deuruski was not employed by West Pullman until 1958, he stated that he "would almost be certain" that the signature card he had seen subsequent to decedent's death was the same one originally signed by Waitkevich in 1954. Deuruski admitted that he had no knowledge as to when or by whose direction the typed portion of the card was added. He further testified that the ledger card, also signed by decedent in 1954, bore the typed notation "POD Felis [sic] Palilunas, 6901 W. Englewood." The parties agree that this phrase was typed on the ledger card on a typewriter different from the one used for the rest of the card. Again, Deuruski had no knowledge on whose direction or when these words were added to the ledger card. He also testified that the passbook for the savings account produced by Palilunas subsequent to decedent's death contained a legend "of similar nature" to the one found on the ledger card. The passbook was not received in evidence.

Palilunas testified that he lived at 6901 W. Englewood from 1959 to 1968.

Petitioner contends that the evidence adduced at the hearing was insufficient to establish statutory compliance with the provision dealing with the creation of payable on death (POD) accounts. West Pullman

argues to the contrary and further maintains that the order of the trial court can be sustained on the basis of a resulting trust theory.

The applicable statute, section 4—10(c) of the Illinois Savings and Loan Act (Ill. Rev. Stat. 1969, ch. 32, par. 770(c)), reads in pertinent part as follows:

"If a person opening or holding a withdrawable capital account shall execute a written agreement with the association * * * providing that on the death of the person named as holder, the account shall be paid to or held by another person or persons, the account, and any balance thereof which exists from time to time, shall be held as a payment on death account and unless otherwise agreed * * *:

(1) Upon the death of the holder of the account, the person or persons designated by him and who have survived him shall be the owners of the account * * * and any payment made by the association * * * to any of such persons shall be a complete discharge of the association's * * * obligation as to the amount paid * * *."

We shall first consider the issue of whether the legends appearing on the ledger card and allegedly seen on the passbook satisfied the statutory requirement that the holder "execute a written agreement with the association."

The ledger card was introduced into evidence. On the top appears the typed name "Wiatkevich [sic], J. J.," with decedent's address stated below. His signature appears at the very bottom of the card. The parties agree that decedent signed the ledger card at the time the savings account at West Pullman was opened October 9, 1954. Below decedent's typed name is the typed legend "POD Felis [sic] Palilunas, 6901 W. Englewood." This phrase was typed on a typewriter different from the one used for the rest of the card. Although no one knows when the legend was placed on the card, it is agreed that it could not have been added earlier than 1959, since that is when Palilunas moved to that address. Although decedent's passbook was not introduced into evidence, Deuruski testified that it contained a legend similar in nature to the one found on the ledger card.

In our view, the phrases typed on the ledger card and purportedly typed on the passbook do not satisfy the requirement of a "written agreement." The phrases are mere notations, not agreements. They fail to make clear whether they were made by or at the direction of the holder of the account. Moreover, decedent signed the ledger card long before the addition of the typed phrase. We do not believe that trial courts, however sympathetic they may be toward promoting the validity

of such a "poor man's will," should be burdened with the task of indulging in presumption or conjectures in the face of the statutory mandate that the evidence show the existence of the execution of a written agreement. See McGovern, *The Payable On Death Account and Other Will Substitutes* (1972), 67 Nw. U.L. Rev. 7, 12.

Since this statute became law in 1955, relatively few cases have dealt with the type of evidence needed to satisfy the statute. In all the cases in which our courts have sustained the position that a POD account did exist, either a signature card signed by the holder detailing the terms of the agreement was produced at trial (*In re Estate of La Pierre* (1974), 20 Ill.App.3d 429, 314 N.E.2d 309; *Estate of Schwendeman v. State Savings & Loan Association* (1969), 112 Ill.App.2d 273, 251 N.E.2d 99; *In re Estate of Gubala* (1967), 81 Ill.App.2d 378, 225 N.E.2d 646), or the issue before the court did not concern the actual existence of such an account. *Johnson v. Garellick* (1969), 118 Ill.App.2d 80, 254 N.E.2d 597.

West Pullman cites *In re Estate of La Pierre* (1971), 132 Ill.App.2d 751, 270 N.E.2d 579, in support of its proposition that the evidence was sufficient to satisfy the statute governing POD accounts. In that case, the association maintained that it had lost or mislaid the signature card delineating the alleged payable on death agreement. This court held that the trial court had erred in permitting evidence of the association's custom to substitute for the statutory requirement of a written agreement, and remanded the cause for further hearings because the lost signature card had been located. This court also held that the claimed beneficiary could not rely on a certificate of deposit which stated on its face the printed name of the holder followed by the initials "P.O.D." The specific reason given for this decision was the failure of the certificate to show the name of the designated beneficiary and not the fact that the certificate contained a notation rather than a written agreement. However, since the court did not have to reach the question of the validity of a complete notation, that case offers no support to West Pullman's position here. See *In re Estate of Macak* (1973), 14 Ill.App.3d 261, 302 N.E.2d 436.

■■ Therefore, we hold that the fact that a notation was found typed on a ledger card and passbook of the decedent indicating the purported existence of a payable on death account was insufficient as a matter of law to fulfill the statutory mandate that there be evidence of a written agreement executed by the creator.

We next consider Deuruski's testimony that he saw the missing signature card of decedent containing a typed notation "Payable on Death, Felix Palilunas."

Although Deuruski was not employed by West Pullman in 1954, he

testified, without objection by either respondent, that he "would almost be certain" that the card he had seen was the same one the decedent had signed in 1954. The only thing which had been added was the typed phrase stated above purporting to make the account a payable on death account. The witness testified that he had no idea when or at whose direction the notation had been added to the card.

A blank facsimile signature card for an individual account was introduced into evidence. There is no doubt that had there been evidence on such a signature card of an authorized change in the nature of the account to one payable on death the statutory requirement of a written agreement would have been met. (See *Estate of Schwendeman v. State Savings & Loan Association, supra.*) Such is not the case here.

■■ A payable on death account is a will substitute, a specific statutory exception to the prescribed manner of making a testamentary disposition found in the Statute of Wills. (*In re Estate of Gubala, supra.*) Accordingly, we believe the statute creating such accounts should be strictly construed. There is absolutely no evidence as to when or at whose direction the account was changed to one denoting a payable on death relationship. The only inference which can be drawn from the record is that decedent's signature on the card antedated the change. Despite the fact that decedent was a customer of West Pullman for many years, no employee of the association or other witness was produced who could relate that decedent knew of the change.

■■ We do not mean to discourage payable on death accounts as will substitutes. We simply hold that the evidence must reflect the account holder's intent. Claims cannot be dubious or ambiguous. Consequently, we hold that the evidence adduced at the hearing failed to meet the statutory prerequisites of a valid payable on death account.

West Pullman also urges that the trial court's order can be sustained by imposing a resulting trust on the funds in the account. Although this argument was not presented to the trial court, we recognize that any argument may be relied on in support of a judgment on appeal as long as a factual basis for such a point was before the trial court. *Shaw v. Lorenz* (1969), 42 Ill.2d 246, 246 N.E.2d 285.

■■ A resulting trust arises by operation of law and is founded on the presumed intent of the parties as ascertained from their acts and attendant circumstances. (*Hanley v. Hanley* (1958), 14 Ill.2d 566, 152 N.E.2d 879.) Although various kinds of transactions have been held to constitute resulting trusts, the most common have been in cases where an express trust has been held ineffective (*Waggner v. Clauson* (1948), 399 Ill. 403, 78 N.E.2d 203) or where there is evidence of payment of consideration by one party for conveyance of title to property to another. (*Scanlon v.*

*Scanlon* (1955), 6 Ill.2d 224, 127 N.E.2d 435.) The evidence must be clear, convincing, and unmistakable before such a doctrine will be utilized. *Tuntland v. Haugen* (1948), 399 Ill. 595, 78 N.E.2d 308.

■■ West Pullman's position is that the intent as manifested by decedent's actions was clearly directed toward giving his "only surviving friend," and not some distant relative, the funds in the estate. In the first place, the record does not furnish any indication whatsoever of decedent's intent or of the purported friendship between himself and Palilunas. Moreover, West Pullman's argument does not detail how the actions taken here fit within any of the well-established transactions supporting the imposition of a resulting trust. The facts and holding in *In re Estate of Roth* (1968), 96 Ill.App.2d 292, 238 N.E.2d 607, cited by West Pullman, are inapposite to the present case.

Accordingly, the order of the circuit court of Cook County dismissing the citation petition is reversed, and the cause is remanded for further proceedings not inconsistent with the holdings of this opinion.

Order reversed and remanded.

DEMPSEY and MEJDA, JJ., concur.