BILLIE J. GATES, Adm'x of the Estate of Cecil Charles Snider, Deceased, Plaintiff-Appellant, v. STATE LOAN AND SAVINGS ASSOCIATION *et al.*, Defendants-Appellees.

Fifth District No. 5—84—0018

Opinion filed March 7, 1985.

Steven N. Mottaz, of Thomas, Mottaz, Eastman & Sherwood, of Alton, for appellant.

William E. Brandt, of Granite City, for appellee Donna Snider.

PRESIDING JUSTICE JONES delivered the opinion of the court:

This appeal presents two questions for review: (1) whether an account established by the decedent, Cecil Charles Snider, at State Loan and Savings Association, a defendant herein, was established in compliance with the requirements of section 4—10(c) of the Illinois Savings and Loan Act (Ill. Rev. Stat. 1983, ch. 17, par. 3101(c)) pursuant to a payable-on-death account and (2) whether the trial court abused its discretion in finding that the decedent intended Donna Jean Allison, another defendant herein, to be the beneficiary of this and other accounts.

Upon the death of Cecil Charles Snider, the plaintiff, Billie J. Gates, as administrator of the decedent's estate, brought an action for declaratory judgment and other relief against State Loan and Savings Association of Granite City (hereinafter referred to as State), Illini Federal Savings and Loan Association of Fairview Heights (hereinafter referred to as Illini Federal), Germania Federal Savings and Loan Association of Alton (hereinafter referred to as Germania Federal), Donna Snider and Donna Jean Snider. Cecil Snider died on February 25, 1978. In the first count of the complaint the plaintiff alleged that among the assets of decedent's estate was an "Optional Payment Withdrawal Capital Account" with defendant State bearing certificate number 4988C and "payable on death to Donna Snider." This count was subsequently amended to allege that the account was "P.O.D. to Donna Snider." The plaintiff alleged that the decedent had never been married or adopted any children and had no heirs or relatives named Donna Snider. The plaintiff's demand upon the defendant State for delivery to her of the asset as an asset of the decedent's estate had been refused. As a result, the plaintiff sought a judgment declaring Donna Snider to be a nonentity and the plaintiff entitled to the proceeds of the account, with the defendant State to pay over the proceeds of this account for inclusion among the assets of the estate.

Similarly, in the second count of the complaint, the plaintiff alleged that among the assets of the estate were two savings accounts with Illini Federal in the name of Cecil Charles Snider, "Trustee for Donna Jean Snider," the accounts bearing the numbers 03—670576—1 and 03—66165—0. In the third count of the complaint the plaintiff alleged that the assets of the estate included a savings account with Germania Federal in the name of Cecil Charles Snider, "Trustee for Donna Jean Snider," the account bearing the number 01—045949. Demand on both these defendants for delivery of the assets to the plaintiff had been refused, and the plaintiff in each of these two counts likewise sought a judgment declaring Donna Jean Snider to be a nonentity and plaintiff entitled to the proceeds of the accounts, with the defendants to pay over the proceeds of the accounts for inclusion among the assets of the estate.

Subsequently, in an affidavit, Donna Jean Allison, who was born Donna Jean Mayberry and is also known as "Donna Snider/Donna Jean Snider," stated that she is the same person who is named in the complaint for declaratory judgment as Donna Snider and Donna Jean Snider, that she is the same person whose name appears on "the 'Optional Payment Withdrawal Capital Account,' savings account #03—670576—1, savings account #03—66165—0, savings account #01—

045949," as described in the complaint, and that she is the "natural child and legal heir" of the decedent, the affiant having been born on June 25, 1958, at Alton. Thereafter the defendant Donna Jean Allison filed an affirmative defense in which she stated that she is the person designated, or the person intended to be designated, as beneficiary of each account specified in the complaint and that she does not claim that she is entitled to the sums in question by reason of heirship or the laws of descent and distribution. Following blood tests undertaken prior to trial to determine blood types, the defendant, Donna Snider/ Donna Jean Snider, admitted that she was not the decedent's natural daughter. Prior to trial, Steven Mottaz, appointed as administrator of the estate, was substituted as party plaintiff for Billie Gates, who had resigned as administratrix.

At a bench trial the plaintiff introduced certain exhibits that were admitted, consisting primarily of the financial records for the accounts in question, but called no witnesses. Plaintiff's exhibits indicate that the account at State was opened on March 25, 1963, that the two accounts at Illini Federal were opened on January 7, 1974, and on March 23, 1977, and that the account at Germania was opened on February 9, 1973.

Among the witnesses called by the defendant, Donna Snider/ Donna Jean Snider, was Warren Collins, the administrative assistant for elementary education in Granite City, in charge of school records. He had brought with him the elementary school record of Donna Jean Snider, whose birth date as shown on the record was June 25, 1958, and whose parent or guardian, as shown there, was Cecil C. Snider. The child was, according to the record, first enrolled at Stallings School on September 3, 1963, Lake School on September 23, 1963, and McKinley School on September 15, 1966. The school record indicates that Donna Jean Snider attended Lake School for virtually all of kindergarten and through the second grade and that she attended McKinley School for the third through sixth grades. On the health record for "Snider, Donna Jean" the name "Mayberry" appears above "Snider." The date of birth on the health record is, likewise, June 25, 1958. The address of the student on both these documents is "1316 Granite." On cross-examination the witness stated that the information on the elementary record is taken at the time the student is enrolled and is supplied by the parent or guardian. The card indicates, the witness said, that the student's birth certificate was presented. During cross-examination of this witness the plaintiff introduced the birth certificate of Donna Jean Mayberry, born June 25, 1958, in Alton, to Clara Jane Mayberry. In the space for the father's name on

the birth certificate appear the words "Legally omitted."

The next witness to testify for this defendant was Clara Harris, the mother of Donna Jean Allison. She stated that her address had been "1316 Granite" from the time Donna was one and a half years old until she was 13 years old and that the owner of that property was Cecil Snider, who had bought the house "for Donna to live in." The witness indicated that she had neither paid rent to him nor otherwise compensated him for the use of the house. She had, she said, met Cecil Snider in 1952 and "went with him," spending "[e]very evening and every weekend" with him from 1952 until 1978. She stated that Cecil Snider paid for the medical expenses related to her pregnancy and the delivery of the child as well as for all the girl's books "[a]ll through school" together with the expenses of enrollment. The witness testified that the child "went to school under the name of Snider," which was "[f]rom Mr. Snider." The child used the name Snider "[a]ll through school until junior high," when she used the name Mayberry because "the kids started making fun of her last name at school." When her daughter was in the seventh grade, the witness said that she had called the school to change the name on the child's records from Snider to Mayberry. The witness described Cecil Snider's attentions to the child as follows: "Well, he'd take her out to eat, bring her home, and get with her, gifts, buy her clothes. And before he would leave he'd give her a certain amount of money to spend on herself." She testified that Cecil Snider was present at every Christmas and on every birthday and would bring her presents or give her money. She stated that "[l]ots of times when [Cecil Snider] was on vacation he'd take her up to his sister's [in Michigan] or down to Rolla, Missouri to his other sister's." The witness testified to having knowledge of two of the bank accounts in question. She stated that she and Donna had been present when Cecil Snider opened the two accounts "[a]t Federal Savings & Loan in Granite and one at Illini in Alton" because he had asked the witness to go in order to "verify" "[t]hat Donna was his daughter." She testified that she had done so. Several pictures of Cecil Snider and Donna at various ages are included in the record.

On cross-examination the witness testified that she had been divorced from her first husband in 1951 and had remarried in 1963. She had, she said, divorced her second husband, Henry Hack, in that same year because of his mistreatment of Donna. In 1971 she married her present husband. While she was married to Henry Hack she did not live at 1316 Granite but resumed living there following the divorce from him. She testified that Donna owes her money and that Donna

would give her some of the money involved in the case at bar "[o]nly if I needed it." She stated that she had gone to "Illini" in 1964 with Cecil Snider and Donna when the child was "[s]ix or seven years old" and to State in 1973 with the decedent. Cecil Snider had told her eight years ago, she said, that Donna would inherit his savings. According to her testimony, the decedent referred to Donna as his daughter and by the name of "Snider." She and Cecil Snider had, she said, taken Donna to be enrolled in kindergarten, and the decedent had provided the information concerning the child to the school.

Testifying in her own behalf, Donna Jean Allison stated that her maiden name was Mayberry and that she had been known as Donna Jean Snider. Until the seventh grade, she said, she had used the name Donna Jean Snider in school. Thereafter she used the name Mayberry. She was born on June 25, 1958, and her childhood address was 1316 Granite, where she had lived with her mother. She testified that as a child she had been around Cecil Snider "[d]ay and night" every day, including weekends.

The remaining witness called by Donna Jean Allison was Lester Kyle, 24 years old, who testified that he had known Donna Jean Allison as Donna Jean Mayberry and as Donna Jean Snider. He had known her since the third grade in Stallings Grade School when she was known as Snider and had known her at Lake School, which he attended for the fifth and sixth grades. Her name changed, he said, "around '71" when "she was going to the junior high school." He stated that the school children had teased her by calling her "Snodgrass" instead of "Snider."

In an order entered December 5, 1983, the trial court found that the decedent's account at State, despite the plaintiff's assertions to the contrary, "was sufficient to establish a payment-on-death account, with the beneficiary being Donna Snider." The court found that the other accounts in dispute were "trustee accounts with Charles Snider as trustee and Donna Jean Snider as beneficiary." The court determined that it needed then to "look to the evidence adduced at trial to determine who 'Donna Snider' and/or 'Donna Jean Snider' is," stating as follows:

> "The evidence showed a relationship existing between 'Donna Jean Mayberry' a/k/a 'Donna Jean Allison' and Charles Snider from the birth of 'Donna Jean Mayberry,' a/k/a 'Donna Jean Allison' until the death of Charles Snider. The undisputed testimony indicated Charles Snider brought gifts for Mayberry, took her on vacations and otherwise treated her in a relationship not unlike that of a father and daughter. From the evidence intro-

duced at trial, the Court would be hard pressed to find that Donna Jean Mayberry, a/k/a Donna Jean Allison, is not the Donna Snider and/or Donna Jean Snider named as beneficiary in the accounts established by Charles Snider."

The court specifically found that "Donna Snider and/or Donna Jean Snider is the same person as Donna Jean Mayberry, a/k/a Donna Jean Allison," that "Donna Jean Mayberry, a/k/a Donna Jean Allison, is the person designated as the beneficiary of the payment-on-death account and the trust accounts," and that the institutions holding such accounts should make payments to Donna Jean Mayberry of the amounts in the accounts, less costs. From this judgment the plaintiff appeals.

Section 4—10(c) of the Illinois Savings & Loan Act provides:

"If a person opening or holding a withdrawable capital account shall execute a written agreement with the association or federal association providing that on the death of the person named as holder, the account shall be paid to or held by another person or persons, the account, and any balance thereof which exists from time to time, shall be held as a payment on death account and unless otherwise agreed between the persons opening the account and the association or federal association:

(1) Upon the death of the holder of the account, the person or persons designated by him or her and who have survived him shall be the owners of the account (as joint owners with right of survivorship if more than one) and any payment made by the association or federal association to any of such persons shall be a complete discharge of the association's or federal association's obligation as to the amount paid; and

(2) The person to whom such account is issued may change during his or her lifetime the designation of any of the persons who are to be holders at his death, by a written direction accepted by the association or federal association; and

(3) The person to whom such account is issued may withdraw or receive payment and any payment made by the association or federal association shall be a complete discharge as to the amount paid." Ill. Rev. Stat. 1983, ch. 17, par. 3101(a).

■ The plaintiff maintains that the decedent's signature card at State did not meet the statutory requirement of a "written agreement" for a payable-on-death account and is, therefore, an account standing simply in the name of the decedent and, thus, an asset of the

estate. Just below the number of the account, which appears at the top of the preprinted card that Cecil Snider signed on March 25, 1963, his name has been typewritten above the words, also typewritten, "P.O.D. to Donna Snider." Immediately thereafter the preprinted card provides:

"The undersigned hereby applies for membership and for a savings share account in the
STATE LOAN AND SAVINGS ASSOCIATION
Granite City, Illinois
and for issuance of membership in the approved form in the joint names of the undersigned, *as tenants by the entireties,* with the right of survivorship. Specimens of the signatures of the undersigned are shown below, and the association is hereby authorized to act without further inquiry, in accordance with writings bearing both of such signatures. Upon the death of one of the undersigned, the association is thereupon authorized to act without further inquiry, in accordance with writings bearing the signature of the survivor of us, and any such payment or delivery of the repurchase or redemption value of any such share account or other rights relating thereto or a receipt or acquittance signed by the survivor of us shall be a valid and sufficient release and discharge of said association." (Emphasis added.)

Only one signature appears on the card, that of Cecil C. Snider, above his address and the date.

As the supreme court pointed out in *Douds v. Fresen* (1946), 392 Ill. 477, 479, 64 N.E.2d 729, 730, "[s]ince the adoption of the Married Woman's Act of 1861, estate by the entireties, as known at the common law, have [*sic*] not been recognized in this State." A tenancy by the entireties could be created, of course, only between a husband and wife. It is evident that the institution in the instant case provided Cecil Snider with an anachronistic signature card largely inappropriate and irrelevant to his needs. Nevertheless, it is the card by which the account was established on the day the initial deposit was made into it.

Although the provision concerning a tenancy by the entireties is unfortunate, the term "P.O.D.," or "payable on death," is a term of art not in general use among laymen. Here it was used in a transaction conducted in the environs of a financial institution, in which this particular meaning is usually ascribed to the term.

Although the plaintiff draws parallels between the case at bar and that of *In re Estate of Waitkevich* (1975), 25 Ill. App. 3d 513, 323

N.E.2d 545, the two are readily distinguishable. In *Waitkevich* the person in charge of the association's records testified that he had seen a signature card for an individual account bearing the decedent's signature and containing the typewritten words, "Payable on death, Felix Palilunas." (25 Ill. App. 3d 513, 515, 323 N.E.2d 545, 547.) The signature card, however, had been lost or misplaced. A ledger card signed by the decedent in 1954, the same year in which he had signed the signature card, bore the typed notation " 'POD Felis [*sic*] Palilunas, 6901 W. Englewood.' " (25 Ill. App. 3d 513, 515, 323 N.E.2d 545, 547.) Felix Palilunas testified that he had lived at 6901 W. Englewood from 1959 to 1968. The parties agreed that the phrase had been typed on the ledger card on a typewriter different from the one used for the rest of the card. The court concluded that the phrase typed on the ledger card, and purportedly on a passbook as well, was a mere notation, not an agreement. The court said of the two phrases, on the ledger card and the passbook, that "[t]hey fail to make clear whether they were made by or at the direction of the holder of the account. Moreover, decedent signed the ledger card long before the addition of the typed phrase." (25 Ill. App. 3d 513, 516, 323 N.E.2d 545, 548.) By contrast in the case at bar, there is no reason to believe that the typewritten words were placed on the signature card at any time other than that on which Cecil Snider signed the card, and they appear to have been made at his direction in an attempt to designate Donna Snider as the owner of the account upon his death. We conclude that the phrase "P.O.D. to Donna Snider," coupled with Cecil Snider's dated signature on this card provided by the bank, satisfies the statutory requirement of a "written agreement" to establish a payable-on-death account.

■ Turning to the other issue the plaintiff raises, we must disagree that the trial court abused its discretion in finding that the decedent intended Donna Jean Allison to be the beneficiary of this and the other accounts. It is unnecessary to reiterate the facts stated above that support the conclusion that Donna Jean Snider, Donna Snider, Donna Jean Allison, and Donna Jean Mayberry are one and the same. Although her mother's account of the amount of time she spent with Cecil Snider seems, at the least, exaggerated in light of the mother's remarriages in 1963 and 1971, and although her mother's testimony was inconsistent with the evidence in the plaintiff's exhibits concerning the dates on which the accounts at State and Illini Federal were opened, these inconsistencies and exaggerations do not alter the conclusion that Donna Jean Mayberry Allison and Donna Jean Snider are the same person and that Cecil Snider intended this

person to be the beneficiary of these four accounts. Similarly, although the witness Lester Kyle recalled Donna Jean Snider as having attended Stallings and Lake Schools at times different from those indicated on the school record, this inconsistency does not compel a different result. Whether Donna Jean Allison is, in fact, Cecil Snider's daughter is, of course, not in issue, but, rather, whether he intended her to be the beneficiary of this and the other accounts. The evidence indicates that he did so, and the trial court committed no abuse of discretion in so finding.

Affirmed.

KARNS and WELCH, JJ., concur.