ESTATE OF MARGARET A. FLETCHER, DECEASED, MARY
M. STARR, ADMINISTRATRIX, PETITIONER *v.*
COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket No. 37289-87.      Filed January 31, 1990.

*Rex Earl Starr*, for the petitioner.
*Donald Edwards*, for the respondent.

GERBER, *Judge:* Respondent, by means of a statutory notice of deficiency, determined a $45,190.30 Federal estate tax deficiency with respect to the Estate of Margaret A. Fletcher (estate). The two issues presented for our consideration concern whether the value of certain assets should be includable in Margaret A. Fletcher's gross estate. The assets in question are jointly held U.S. savings bonds, series E, and a certificate of deposit made "payable on death." We consider here the inclusion of assets in the estate of the last person to die from a common accident where both decedents' names appear on the bonds and certificate.

FINDINGS OF FACT

The parties' stipulation of facts and exhibits are incorporated by this reference. Mary M. Starr, Administratrix (petitioner), was a resident of Stilwell, Oklahoma, at the time the petition was filed in this case.

Margaret A. Fletcher, deceased (decedent), and her husband, Jack B. Fletcher, Sr. (husband), were both involved in an automobile accident. Husband died during the last hours of September 18, 1984, and decedent died about 3 hours later, during the first hours of September 19, 1984. Both individuals died intestate. Decedent had been a housewife and husband owned and operated a hardware store during most of their married lives in Stilwell, Oklahoma.

At the time of his death, husband was the owner of a $100,000 certificate of deposit (CD) issued in Oklahoma on August 19, 1983, and maturing on February 19, 1985, with ownership reflected as "Jack B. Fletcher, P.O.D. Margaret Fletcher." At the time of her death, decedent was the owner of a $100,000 CD issued in Oklahoma on August 19, 1983,

and maturing on February 19, 1985,[1] with ownership reflected as "Margaret Fletcher, P.O.D. Jack B. Fletcher." Husband's estate reported his $100,000 CD as an asset. Decedent's estate included $100,000 for her CD and $33,333.33 as representing one-third of husband's CD. Respondent determined that decedent's estate should include the entire value of husband's CD and determined that the gross estate should be increased by $66,666.67.

At the time of husband's death, husband and decedent held 45 series E bonds in a co-ownership, with the word "or" joining their names. The value of the bonds was reported on husband's Federal estate tax return at $106,193. Husband's Federal estate tax return treated decedent as having survived husband and a $151,330 marital deduction was claimed (some part of which was attributable to the bonds). Most of the bonds reflected husband's name first, but three of them had decedent's name listed first. Other than the names and the word "or" between them, no additional designations or indications of ownership appeared on the bonds. The estate reported a $70,795 value for series E bonds on its Federal and State of Oklahoma estate tax returns. The State of Oklahoma Tax Commissioner determined or asserted that the estate should have reported $106,193 or a $35,398 increase to estate assets. Respondent, in the notice of deficiency, mirrored the State of Oklahoma and also determined a $35,398 increase.

All of the CD's and bonds were purchased with money earned by husband in his business endeavors during his marriage to decedent.

The Oklahoma district court allowed a final account in husband's intestate estate which reflected the savings bonds and one of the CD's as husband's assets to be distributed one-third to decedent and one-third to each of the two children of the marriage between husband and decedent.

---

[1]Although the certificate of deposit reflects a maturity date of Feb. 19, 1984, the parties have stipulated and we have found the maturity date to be Feb. 19, 1985. The error on the document is obviously typographical.

OPINION

This case concerns an unfortunate situation involving the accidental death of married individuals with an interest in common property within a short time of each other. We are focused upon the estate of the last to die and seek to decide the portion of co-owned property which should be included in the second gross estate and which had been fully included in the first gross estate. Due to variations in the form of ownership and treatment of the two types of property involved, we will consider them separately.

*United States Savings Bonds, Series E (bonds)*—At the time of their deaths, decedent and husband owned 45 bonds as co-owners (registered in both names connected by the disjunctive "or"). The bonds were purchased by means of the business activity of husband during the marital estate of decedent and husband. The full $106,193 value[2] was reported on husband's estate tax return. The probate estate of husband reflected the inclusion of U.S. savings bonds, but the value or number of bonds was not indicated and, accordingly, the record here does not reflect whether all 45 bonds were included in husband's probate estate. We note, however, that respondent's determination (and that of the State of Oklahoma) appears to indicate that all 45 bonds were included in husband's estate. Decedent's Federal estate tax return included $70,795 for bonds. Although the parties have not delineated the source of the $70,795 amount, it appears to represent the rounded-off sum of decedent's one-half bond ownership ($106,193 divided by 2 = $53,096.50), plus her one-third intestate share of husband's one-half interest ($53,096.50 divided by 3 = $17,698.83). Petitioner asserts that decedent, at the time of her death (3 hours after her husband), owned a one-half interest in the bonds and was entitled to an additional one-third by operation of the laws of intestacy of the State of Oklahoma. Respondent, on the other hand, argues that after the death of husband, decedent, as surviving co-owner, owned 100 percent of the co-owned bonds, all of which is includable in her estate.

---

[2]The parties do not address and we are without jurisdiction to decide whether husband's estate should have included the value of all 45 bonds.

Generally, the value of all property owned by the decedent at the time of death is includable in the gross estate. Secs. 2031 and 2033.[3] When one co-owner of jointly held property dies, section 2040 provides rules to determine how much, if any, of the jointly held property is includable in the gross estate of the deceased co-owner. Section 2040 is not applicable here because we are dealing with the second estate of a co-owner of jointly held property. At the time of decedent's death, husband had predeceased her and, accordingly, we must determine the interest she held after husband's death.

We will look to State law to determine whether the decedent possessed an interest in property at the date of death. *Helvering v. Stuart,* 317 U.S. 154, 161 (1942); *Tracy v. Commissioner,* 70 T.C. 397, 402 (1978). We will follow the decision of the highest State court, but in the absence of a decision by that court, we may look to other courts' rulings and holdings. *Commissioner v. Estate of Bosch,* 387 U.S. 456, 465 (1967). Where, however, there is a controlling Federal statute or regulation, it overrides or preempts any inconsistent State property law, including the decision of the highest State court. *Free v. Bland,* 369 U.S. 663, 669 (1962); *United States v. Chandler,* 410 U.S. 257, 262 (1973).

U.S. savings bonds, series E, are issued by the Secretary of the Treasury under authority granted in title 31 U.S.C. section 3105 (1982). Within that authority, the Secretary may, among other authorizations, prescribe the form and amount, the way in which they will be issued, the conditions (including restriction on transfer) to which they will be subject, and conditions governing their redemption. 31 U.S.C. sec. 3105(c)(1), (2), (3), and (4) (1982).

The Secretary has issued regulations concerning the ownership of bonds issued under authority of 31 U.S.C. section 3105. Co-ownership in the "or" form is a permissible form of ownership under regulation section 315.7, 31 C.F.R. (1988). The use of the "or" form was also permissible at the time of decedent's death. Regulation section 315.70, 31 C.F.R. (1988), and section 315.61, 31 C.F.R. (1959), state: "If one of the coowners named on a bond has died, the

---

[3]Section references, unless otherwise indicated, are to the Internal Revenue Code as amended and in effect at decedent's date of death, Sept. 19, 1984.

surviving coowner will be recognized as its sole and absolute owner, and payment or reissue will be made as though the bond were registered in the name of the survivor alone." Accordingly, under Federal law, decedent became the sole owner of the bonds upon husband's death. These regulations have been upheld in similar circumstances by the Supreme Court. *United States v. Chandler*, 410 U.S. 257, 262 (1973).

The State of Oklahoma district court, in an order allowing the final account, recited that husband owned U.S. savings bonds and that under the rules of intestacy decedent and each of the two adult children, as heirs of husband, were entitled to one-third of said property. We first note that the district court is not the highest court of the State of Oklahoma. Irrespective of the district court's status within the State, under the principles expressed above, the Federal regulation preempts State property law or court decisions. In similar circumstances involving Oklahoma litigants, the Court of Appeals for the Tenth Circuit held that a surviving joint tenant of U.S. savings bonds became sole owner upon her husband's death, in spite of an Oklahoma Probate Court order and decree to the contrary. *McKee v. Hassebroek*, 337 F.2d 310, 312 (10th Cir. 1964).

Accordingly, we hold that the $106,193 value of the 45 U.S. savings bonds, series E, is includable in decedent's gross estate.

*Certificate of Deposit, Payable On Death*—In the same manner as the bonds, husband's estate included a $100,000 CD with ownership reflected as "Jack B. Fletcher, P.O.D. Margaret Fletcher." The Oklahoma court order allowing the final account in husband's estate recited that decedent and each of the two adult children, as heirs of husband, were entitled to one-third of said property. Petitioner included $33,333.33 value in the gross estate representing decedent's portion of husband's CD.

Petitioner argues that payable on death (P.O.D.) designations are not favored and have been found invalid by the Oklahoma Supreme Court. Respondent counters that the Oklahoma Supreme Court opinion relied upon by petitioner has been superseded by subsequent Oklahoma legislation approving of P.O.D. designations and excepting them from

the requirements of the Statute of Wills.[4] Petitioner counters that the Oklahoma Supreme Court has not yet interpreted the subsequent legislation and that other State jurisdictions where similar legislation was enacted have limited their interpretation to apply only where the co-owners had a joint lifetime interest in the account.

Accordingly, we consider a scenario where a State court (which is not the highest court in that State) has disregarded a P.O.D. designation in the distribution of assets in a probate proceeding. Although P.O.D. designations have been considered invalid by the highest State court, the State legislature attempted to validate them in legislation subsequent to the highest court's decision. In this situation we must consider the statutory matter and case law of Oklahoma (and, to the extent relevant, of other jurisdictions) to decide whether the holding of the Oklahoma State court order should be followed. *Commissioner v. Estate of Bosch,* 387 U.S. 456, 465 (1967).

The Oklahoma Supreme Court case which found P.O.D. designations to be violative of the Statute of Wills is *Waitman v. Waitman,* 505 P.2d 171 (Okla. 1972). In that case the deceased had, during her lifetime, placed one of her savings accounts into a P.O.D. designation with one of her siblings. Her will, on the other hand, directed that all her personalty should be divided equally between all surviving siblings. The Oklahoma trial and appellate courts held that the deceased had made a valid inter vivos gift of the savings account and that the named sibling became the sole owner of that account upon death of the deceased. The Oklahoma Supreme Court reversed, holding that the attempted inter vivos transfer was actually not inter vivos and was violative of the Statute of Wills and should not be favored over the directions provided in the will. *Waitman v. Waitman,* 505 P.2d at 174, 175. It should be noted that the primary basis of this holding was that the deceased's attempt to make her sibling a co-owner failed because the interest could not take effect until death of the original account holder. Apparently, a different result would have

---

[4]Use of the term "Statute of Wills" in the context of this opinion denotes compliance with the requirement for a writing and other formalities.

been reached if the account holder had made an inter vivos gift to create joint co-ownership in the account.

In a 1979 amendment, effective June 27, 1980, to the Oklahoma Banking Code of 1965 (Okla. Stat. tit. 6), provision was made for the use of P.O.D. designation, as follows:

Sec. 901. Deposits in name of two or more persons—Payment of deposit or interest thereon—Change in designation of beneficiary—Release and discharge of bank

1. * * * when a deposit is hereafter made in any bank using the terms "Payable on Death" or "P.O.D.", such deposits shall be payable on the designated person's death to the named beneficiary if living and if not, to the named beneficiary's estate, notwithstanding any provision to the contrary contained in Sections 41 through 57 of title 84. Such deposit shall constitute a contract between the depositor and the bank that upon the death of the named owner of the account, the bank will hold the funds for or pay them to the named beneficiary or the estate of the named beneficiary.

Okla. Stat. tit. 6, sec. 901 (1979). Title 84, sections 41 through 57 concern, among other matters, execution of wills, including capacity and power to make a will, execution, and attestation of wills.

Petitioner has stated that the P.O.D. designation has been a part of the laws of Oklahoma in the predecessors to Okla. Stat. tit. 6, sec. 901 (1979). Petitioner then argues that the Supreme Court of Oklahoma in *Waitman v. Waitman, supra,* was aware of the P.O.D. designation and either ignored it or thought it inapplicable. Respondent argues that the P.O.D. designation was added by the 1979 revision of section 901 of the Oklahoma Banking Act. A review of the statutes involved reveals that respondent is correct.[5]

---

[5]The predecessors of Okla. Stat. tit. 6, sec. 901 (1979), are Oklahoma Laws 1937, p. 298, sec. 55; Oklahoma Laws 1945, p. 24, sec. 1; and Okla. Stat. tit. 6, sec. 1180 (1961).

The 1937 and 1945 Laws contained the following language:

When a deposit has been made or shall hereafter be made, in any bank or trust company transacting business in this State in the names of two or more persons, payable to either, or payable to either or the survivor, such deposit, or any part thereof, or any interest or dividend thereon, may be paid to either of said persons, where the deposit is made in the name of husband and wife, parent and child, brother and sister, or brothers and sisters, whether one of such person shall be a minor or not, and whether the other be living or not; and the receipt or acquittance of the person so paid shall be a valid and sufficient release and discharge to the bank for any payment so made. [The 1945 legislation removed language here which is not reproduced due to irrelevance.]

Although it appears clear from the statutory language in effect at the time of the creation of the CD and the deaths of decedent and her husband that the Oklahoma legislature had "reversed" the holding of the Oklahoma Supreme Court in *Waitman v. Waitman, supra,* petitioner argues that similar statutes in other states have been interpreted to limit the scope or circumstances under which a P.O.D. designation is effective. No post-enactment Oklahoma cases address the P.O.D. designation language of Okla. Stat. tit. 6, sec. 901. Petitioner has cited several cases from different jurisdictions and each will be separately considered.

Petitioner relies on *Young v. McCoy,* 152 Neb. 138, 40 N.W.2d 540 (1950); and *Northwestern National Bank of Sioux Falls v. Daniel,* 80 S.D. 528, 127 N.W.2d 714 (S.D. 1964), because (a) the "South Dakota law is considered to be very persuasive * * * because [the Oklahoma law was derived from] the South Dakota Statutes * * * " and (b) because the courts found a P.O.D. designation was violative of the Statute of Wills in interpreting a statute similar to the Oklahoma statute. Petitioner's observations are correct but inapposite. The cases are inapposite because the opinions consider the context of statutes similar to the predecessors of the one in effect in Oklahoma at the time under consideration. As an example the South Dakota statute stated:

Whenever a deposit has been made or shall hereafter be made, in any bank in the names of two or more persons, payable to any of them, or payable to any of them or the survivor of them, such deposit or any part thereof, or any interest or dividend thereon; may be paid to any one or

---

Okla. Stat. tit. 6, sec. 118o (1961), contained the following language:

When a deposit has been made or shall hereafter be made, in any bank or trust company transacting business in this State in the names of two or more persons, payable to either, or payable to either or the survivor, such deposit, or any part thereof, or any interest or dividend thereon, may be paid to either of said persons, where the deposit is made in the name of husband and wife, parent and child, bother and sister, or brothers and sisters, whether one of such persons shall be a minor or not, and whether the other be living or not; and the receipt or acquittance of the person so paid shall be a valid and sufficient release and discharge to the bank for any payment so made.

Okla. Stat. tit. 6, sec. 901 (1965), contained the following language:

When a deposit has been made or shall hereafter be made in any bank in the names of two or more persons, payable to any of them or payable to any of them or the survivor, such deposit, or any part thereof, or any interest thereon, may be paid to either of said persons, whether one of such persons shall be a minor or not, and whether the other be living or not; and the receipt or acquittance of the person so paid shall be valid and sufficient release and discharge to the bank for any payment so made.

more of said persons whether the others be living or not; and the receipt or acquittance of the person or persons so paid shall be a valid and sufficient release and discharge to the bank for any payment so made. [S.D. Codified Laws Ann. sec. 51-22-5 (1980).]

This language would not appear to authorize payment on death (the form in which the bank accounts in the above cases were designated) without a joint interest prior to death of one co-owner. The holding of these courts is not helpful in interpreting a statute which provides for ownership and payment in P.O.D. designation situations. Accordingly, these cases predate and are essentially identical to *Waitman v. Waitman, supra,* and they do not provide any assistance in resolving the controversy before us.

*Cook v. Bevill,* 246 Ark. 805, 440 S.W.2d 570 (1969); *Rascoe v. Rascoe,* 265 Ark. 371, 578 S.W.2d 892 (1979); *McDonald v. Treat,* 268 Ark. 52, 593 S.W.2d 462 (1980); *Corning Bank v. Rice,* 278 Ark. 295, 645 S.W.2d 675 (1983). This succession of Supreme Court of Arkansas cases relates to the principle that in interpreting the State statute (essentially the same as the South Dakota statute quoted above) there is a requirement that the purchaser of a certificate of deposit (or designator of a bank account) designate in writing that it was his wish to have the certificate payable on death to another person. The rationale is the same as *Waitman v. Waitman, supra,* and has become the law in Arkansas. These cases are likewise not of any assistance because the modified statutory language in the 1979 version of the Oklahoma statute is not addressed or considered.

*In re Estate of Waitkevich,* 25 Ill. App. 3d 513, 323 N.E.2d 545 (1975). This case involved a P.O.D. designation that had been added to a savings account ledger card at a time subsequent to the opening of the account, when the owner had signed the ledger card. The Illinois court held that the deceased owner's failure to sign the amendment to the card was fatal to qualification under the appropriate Illinois statute. The Illinois statute (Ill. Rev. Stat. ch. 32, par. 770(c) (1969)) reads, in pertinent part:

If a person opening * * * a withdrawable capital account shall execute a written agreement with the association * * * providing that on the death

of the person named as holder, the account shall be paid to * * * another person * * *

. (1) Upon the death of the holder of the account, the person or persons designated by him and who have survived him shall be the owners of the account * * * .

Although petitioner finds this case analogous, we find the statutory differences distinguish the Illinois case from our Oklahoma case. The Illinois statute requires the execution of a written agreement, whereas the Oklahoma statute does not have the requirement of a writing. The Oklahoma statute permits P.O.D. designation when a deposit is hereafter made in any bank using the terms "Payable on Death" or "P.O.D." The Illinois case does not stand for the proposition that, as a matter of law, a P.O.D. designation is never effective without a signature or writing by the account holder/owner. The Illinois case holding simply follows the requirements of the Illinois statute.

Petitioner's final position is that a P.O.D. designation must be some form of gift or that a "tentative trust" theory must be used to render the designation operative. Petitioner's position assumes that a P.O.D. would otherwise be invalid for failure to comply with the Statute of Wills. Petitioner cites cases from six States where P.O.D. designations were upheld under either a Totten Trust or "tentative trust" theory or under a so-called "contract theory." These theories or approaches are used to establish that the person to whom the account is payable on death is a beneficiary under a trust or by contract. Here again, the necessity for showing an inter vivos interest in the person payable on death is unnecessary if the P.O.D. designation is not violative of the Statute of Wills. Accordingly, there is no need to analyze the cases cited by petitioner on this point.

The Oklahoma statute provides for "Payable on Death" or "P.O.D." designations and does so "notwithstanding any provision to the contrary contained in [the Oklahoma statutory requirements concerning wills]." In spite of this, petitioner insists that the intent of the Oklahoma statute is for the protection of banks and is not to avoid the necessity to comply with the Statute of Wills or the need for an inter vivos interest in the P.O.D. recipient. Although, to some extent, the Oklahoma statute is intended to protect finan-

cial institutions' interests when payment is made to a joint account holder or P.O.D. recipient, the unambiguous terms of the Oklahoma statute establish the P.O.D. designation as a means of transferring ownership and as a substitute for or parallel procedure to the formal statutory requirements for wills. Petitioner has provided no material directly on point or directly analogous to the statutory provisions under consideration.

We hold that at the time of husband's death, under the law of Oklahoma, decedent became the sole owner of the $100,000 CD that had belonged to husband. Accordingly, the full $100,000 value attributable to husband's CD is includable in decedent's gross estate, even though the Oklahoma State court order approving the accounting recited that decedent, as an intestate heir, had inherited only one-third of said CD.

To reflect the foregoing,

*Decision will be entered under Rule 155.*