Jimmy Lonnie LOVELL *v.* MARIANNA
FEDERAL SAVINGS & LOAN
ASSOCIATION and Ann Parker LOVELL

77-289                                    568 S.W. 2d 38

Opinion delivered July 17, 1978
(Division II)

*Ray & Donovan,* for appellant.

*Dane & Felton,* and *Daggett, Daggett & Van Dover,* for appellees.

CONLEY BYRD, Justice. Prior to March 2, 1973, R. L. Lovell, deceased, deposited $36,000.00 with Marianna

Federal Savings & Loan Association in the name of "R. L. Lovell or Ann P. Lovell." The certificates of deposits were issued and delivered to R. L. Lovell. Ann P. Lovell never saw the certificates although she had knowledge the accounts were in her name and her husband's name. The three certificates and ledger sheets evidencing the accounts had the account designation "R. L. Lovell or Ann P. Lovell."

On March 2, 1973, R. L. Lovell personally made known to Marianna Federal Savings & Loan his desire to terminate the joint account with Ann Lovell in the sum of $36,000.00 and to create a new account with right of survivorship between R. L. Lovell and Jimmy Lonnie Lovell. Imogene Eaton, Manager and Secretary-Treasurer of Marianna Federal Savings & Loan took the three certificates in question, placed them in a typewriter and struck the name Ann P. Lovell and typed in the notation "name change 3/2/73." Mrs. Eaton had R. L. Lovell to sign each of the certificates and then witnessed R. L. Lovell's signature by signing her own name as witness. The name of Jimmy Lonnie Lovell was added as joint tenant replacing the name of Ann P. Lovell which had been stricken. Mrs. Eaton pulled the ledger sheets that relate to each of the certificates, struck the name Ann P. Lovell and inserted the name Jimmy Lonnie Lovell and included the information "changed 3/2/73" and caused R. L. Lovell to initial each of the changed ledger sheets. The same sequence of events were performed upon each of the certificates and upon each of the ledger sheets.

Mrs. Eaton testified that the signature card was the binding agreement between the depositor and the institution. Mrs. Eaton also testified that she understood at that time that it was R. L. Lovell's intention to terminate his wife's interest in each of the altered accounts and to create a joint tenancy with the right of survivorship between Jimmy Lonnie Lovell and R. L. Lovell. Mrs. Eaton further testified that if the funds in dispute were determined by the court to be the property of Ann P. Lovell then her purpose in making the changes as well as the intention of R. L. Lovell, as she understood it, has been defeated.

On May 16, 1973, Mr. R. L. Lovell returned and re-

quested that he be allowed to withdraw certain funds represented by the certificates because he had had a serious operation for cancer and his wife had left him. R. L. Lovell was allowed to withdraw $10,000.00 of the total of $66,000.00 at that time because of the emergency situation. Mrs. Eaton testified she recognized on May 16, 1973, that a problem existed concerning the ownership of the account but she did not so advise R. L. Lovell and took no action to correct the situation. At some undetermined date, Mr. R. L. Lovell notified his son, Jimmy Lonnie Lovell, that there were certain certificates of deposits in their joint names and that they were located in a safety deposit box held in their joint names also. Jimmy Lonnie Lovell never actually saw the certificates of deposits until after his father's death and had no knowledge of the transfer occurring on March 2, 1973 until after that date, but did have knowledge of such transfer long before R. L. Lovell's death.

Shortly after Mr. R. L. Lovell's death, Jimmy Lonnie Lovell took the certificates to Marianna Federal Savings & Loan, presented them to Imogene Eaton to liquidate but Mrs. Eaton refused to cash the certificates on the grounds that the maturity date had not expired. Mrs. Eaton was aware of Mr. R. L. Lovell's death at the time; she advised Jimmy Lovell that in order to withdraw the proceeds prior to maturity, there had to be an emergency and that the request to withdraw the proceeds had to go before the Board. She then called her attorney, who came and discussed the matter with Jimmy Lovell. No board meeting was held to consider any emergency situation.

Marianna Federal Savings & Loan thereafter, filed its bill of interpleader and tendered the certificates into the registry of the court naming Ann P. Lovell and Jimmy Lovell as defendants. Jimmy Lovell filed a counterclaim asking that the documents be reformed to comply with the known intention of R. L. Lovell, deceased, and alleged in the alternative that if the funds were awarded to Ann P. Lovell that he was entitled to recover over from Marianna Federal Savings & Loan for their negligent acts in failing to fulfill or carry out the known intention of their depositor after having undertaken to do so.

The bank responded to the counterclaim of Jimmy Lovell by filing only a general denial. The trial court in disposing of the issues in a memorandum opinion ruled as follows:

"OWNERSHIP OF THE FUNDS: The Chancellor reaches the inescapable conclusion that Mrs. Lovell is the owner of the funds as surviving joint tenant. The account was opened as joint with right of survivorship. The attempt to extinguish that estate by manual alteration of the evidence of ownership was totally ineffective. Only by opening a new account in the manner provided by law could the new tenancy be created. This was not done. Likewise, only by physical withdrawal of the funds then in joint tenancy with Mrs. Lovell could the existing one be extinguished. This was not done.

Mrs. Lovell will be declared the owner of all impounded or interplead funds and accrued interest.

THE CROSS COMPLAINT AGAINST MARIANNA FEDERAL: Jimmy Lonnie Lovell cross complained asserting that the certificates should be reformed to conform to the intention of parties at the time and in the alternative that he be awarded damages for the loss of his expectancy resulting directly as a consequence of Mrs. Eaton's neglect. Though the Chancellor agrees with his arguments as to 'privily,' agency and liability of banking institutions for loss resulting from defective bill and notes executed by their executive officers in principle, there are facts and circumstances here present which make them inapplicable.

Ordinarily a married man may make an absolute transfer of personalty during marriage without the consent of his wife, she having only an inchoate right therein, provided of course, it is not done while she stands in the posture of 'creditor.' However, this rule applies only to absolute transfers during the lifetime of the husband. This right is not absolute and cannot apply where, as here, the transfer is made as a mere device by which the husband, while not parting with dominion over the asset during his lifetime, seeks at death to deprive the wife of her distributive share in his personalty. 41 Corpus Juris Secondum, page 419, Section 20(a).

There are many factors to be considered in the application of the rule. Certainly a married man has a right to select one other than his spouse as the payee on death of deposits such as those involved here. If he has made other adequate provisions for her distributive share, the rule would not come into play. In the matter before the court there appears to have been no provision made for her.

Another factor to be considered is the secrecy with which the transfer is made. Here the wife was not informed and, in fact, did not know of the transaction until after his death.

The son was informed of it at some later date by his father, but the certificates remained in the exclusive possession and under his dominion until his death.

Another factor of significance here is that the property sought to be transferred by the husband was not exclusively his nor subject only to an inchoate right of dower. It was jointly held by her as joint tenant with right of survivorship. His intent to divest her of that interest, place it in another while retaining dominion over the whole for his life might, under the circumstances be, in and of itself, a fraud on her rights.

Another factor which ought to be considered is the marital history of the parties. Mr. and Mrs. Lovell had been twice divorced and thrice married. A fourth action for divorce was filed against Mr. Lovell in June of 1973. Mrs. Lovell testified that he had so provoked her that she 'up and left him', fixing the time of separation as a 'couple of months' before her suit was filed. By calculation this would have placed the separation as having occurred after the attempt to transfer was made. However, being so close in point of time the court would be justified in concluding that the actions of Mr. Lovell were influenced or motivated by marital discord.

No one of these factors is considered as conclusive, but when all the facts and circumstances are considered, the court concludes that the attempted transfer was intended as a device by which Mr. Lovell would retain dominion and control over the funds during his lifetime, seeking at his death to deprive her of her rights. A court of equity could not permit him or any person claiming

as his donee beneficiary to retain the fruits of such a fraud on her rights. As between Mr. and Mrs. Lovell the transfer, if completed, would have been so tainted with fraud it would have been set aside. Jimmy Lonnie Lovell, not being a transferee for value and there being no showing that he has changed his position to his detriment in reliance upon it can have no higher standing. He cannot maintain an action against Marianna Federal based upon a transaction so conceived.

The Chancellor is frank to state that these proceedings have presented a number of what appear to be questions of first instance in this state. If the court has misapplied the law on the point herein discussed, then an entirely different result would have been reached, for the Chancellor is firmly in accord with defendants' positions on the questions of privity, agency and authority of Mrs. Eaton.

In the absence of this finding of constructive fraud, conclusions of law favorable to defendant would have been reached."

To sustain the action of the trial court the Marianna Federal Savings & Loan contends on appeal that the conduct of R. L. Lovell in changing the names on the certificates during marital discord was sufficient to sustain a finding of a constructive trust and that the acts of Marianna Federal Savings & Loan has frustrated a fraud. In other words the asserted property interest of appellant exists as a result of a fraudulent act and were it not for the fraud, appellant would have no property interest. We find no merit to this contention and reverse the trial court.

Our cases regularly hold that when fraud is relied upon, it must be distinctly pleaded, *Bridges* v. *Harold L. Schaefer, Inc.,* 207 Ark. 122, 179 S.W. 2d 176 (1944). This case is a prime example why such issues should be raised by the pleadings. The record, as abstracted, does not show the source of the funds that R. L. Lovell deposited with Marianna Federal Savings & Loan and appellant Jimmy Lovell without an issue of fraud having been raised in the pleadings had no reason to make a showing of the source of the funds. The record shows that R. L. Lovell and Ann Lovell were married three times,

they were divorced twice and the third divorce suit was filed on June 22, 1973, before Mr. Lovell's death on November 10, 1973. The certificates of deposit were at all times in the possession of Mr. Lovell — Ann Lovell had never been to the bank and her only knowledge of the deposits was the signing of the signature card. Also at the time this litigation was tried, Mr. Lovell's estate had been probated and closed — yet the record does not show what provision was made for Ann Lovell as the surviving spouse. Ann Lovell in claiming the interpleaded funds did not plead fraud. Consequently, since fraud was not alleged, we hold that the trial court erred in ruling that a constructive fraud was in issue before the parties.

Furthermore, we have concluded that Marianna Federal Savings & Loan is not in a position to rely upon fraud as a defense to Jimmy Lovell's counterclaim in the absence of an allegation of fraud by Ann Lovell. The deposit by Mr. Lovell was made as "a joint account with right of survivorship" with the distinct understanding that either Mr. Lovell or Ann Lovell could withdraw the funds without the signature of the other. The record discloses that a tender of the certificate of deposit was a prerequisite to the withdrawal of any funds and that the three certificates of deposit were always in the exclusive possession of Mr. Lovell. After all the deposit of funds in a joint account with right of survivorship under such circumstances is nothing more than a convenient way to plan one's estate — it has sometimes been referred to as a "Poor Man's Will." A bank holding out to the public that money could be so deposited and withdrawn is not in a position to allege fraud to protect it from its malfeasance in transferring such funds when no such claim is made by the person or persons whose names appear on the joint account. To hold otherwise would permit the bank to receive the funds under a false premise.

The bank in making its argument here relies upon *Union & Mercantile Trust Co.* v. *Hudson,* 147 Ark. 7, 227 S.W. 1 (1921) and *Porter* v. *Trainor,* 243 Ark. 550, 420 S.W. 2d 860 (1967). In both of those cases either the wife or her estate was alleging fraud by the husband. In the last mentioned case we pointed out that it was undesirable to permit rival heirs to

reach far back into the past to raise a suspicion that one spouse had cheated the other in the disposition of funds when the spouse had made no such contention. The same principle should apply to strangers.

It follows that the trial court should have entered judgment in favor of Jimmy Lovell and against Marianna Federal Savings & Loan.

Reversed and remanded.

We agree: HARRIS, C.J., and FOGLEMAN and HOLT, JJ.

HICKMAN, J., dissents.