# THE CORNING BANK *v.* Bobby RICE, Administrator of the Estate of Melvin RICE, and Marlin RICE

82-189                                    645 S.W.2d 675

Supreme Court of Arkansas
Opinion delivered February 7, 1983
[Rehearing denied March 14, 1983.]

*Scott Manatt* and *Phillip Crego,* for appellant.

*Gus R. Camp,* for appellee Robert J. Rice, Adm'r.

*Joe Morphew,* for appellee Marlin Rice.

GEORGE ROSE SMITH, Justice. Melvin Rice died intestate in April, 1981, survived by four children. At his death Melvin owned 11 certificates of deposit issued by the Corning Bank, totaling $39,525.08 and payable on Melvin's death to his brother, the appellee Marlin Rice. A controversy arose between Marlin and Melvin's administrator, because Melvin had not designated in writing, over his signature, that the CD's were payable on his death to Marlin, as the statute and cases require. Ark. Stat. Ann. § 67-552 (e) (Repl. 1980); *Cook* v. *Bevill,* 246 Ark. 805, 440 S.W.2d 570 (1969); *McDonald* v. *Treat,* 268 Ark. 52, 593 S.W.2d 462 (1980).

To settle that dispute the bank filed this bill of interpleader, asking the court to determine ownership as between Marlin and the estate. Marlin, however, filed a counterclaim against the bank, seeking judgment for the face amount of the certificates on the ground that the bank had negligently failed to carry into effect Melvin's intention that the certificates be made payable on his death to Marlin. This appeal by the bank is from a decree holding (a) that the bank is liable to the estate as the owner of the certificates and

(b) that the bank is also liable to Marlin, as the third-party beneficiary of the bank's contract with Melvin, for the amount of all the certificates except one, which was issued more than five years before Melvin's death. Marlin cross appeals as to the excepted certificate. The bank argues several theories in its effort to escape double liability. Our jurisdiction is under Rule 29 (1) (c).

The facts are not in dispute. The bank never requested the purchaser of a CD to designate in writing the payable-on-death beneficiary of the CD. Melvin Rice was a regular customer of the bank up until his death, buying CD's from time to time. On July 20, 1978, he bought a $3,000 certificate payable to himself or on his death to Marlin. During that transaction, which was handled by Louise Coleman, a vice-president of the bank, he asked about his other certificates and learned that some were payable on his death to his son Robert and some to his brother Marlin. He directed that all of them be made payable to Marlin. Ms. Coleman made appropriate changes on the bank's carbon copies of the various certificates. She asked Melvin to bring in the originals so that he could initial the changes on them as well. The chancellor found that he did bring in the originals, which is obviously true, because in every instance the change that was made on the original conformed exactly to the change on the bank's copy, except that it was written on a different typewriter. Ms. Coleman conceded that the changes could have been made by someone else in the bank. That evidently happened, because the various changes could not have conformed exactly to the bank's records unless they had been made at the bank. Certificates bought later by Melvin were made payable on his death to Marlin.

The present controversy arises solely because the bank did not require Melvin to comply with the statute by designating in writing that the certificates be payable on his death to Marlin. Ever since the *Cook* case was decided in 1969 we have consistently held that a payable-on-death certificate is not payable unless the holder signs some instrument to that effect. Hence the trial court was right in holding that the certificates now in issue are owned by Melvin's estate.

Indeed, the bank does not question that holding except by arguing that the bank should not be doubly liable.

The bank's additional liability for its negligence is clear. Marlin's cause of action as a third-party beneficiary is established by two similar cases. In *Lovell* v. *Marianna Federal S. & L. Assn.*, 264 Ark. 99, 568 S.W.2d 38 (1978), we imposed liability in an analogous situation:

> After all the deposit of funds in a joint account with right of survivorship under such circumstances is nothing more than a convenient way to plan one's estate — it has sometimes been referred to as a 'Poor Man's Will.' A bank holding out to the public that money could be so deposited and withdrawn is not in a position to allege fraud to protect it from its malfeasance . . . .

On facts similar to the case at bar the Court of Appeals held the bank liable to a third-party beneficiary of the mishandled transaction between the bank and the purchaser of the certificate, saying:

> There was ample testimony to show that Rebecca Self intended that the three certificates were to pass to Barbara Ann Baker upon Mrs. Self's death, and that Mrs. Self effectively conveyed that intention to appellee [the bank] . . . . The loss to appellant arose because of the failure of appellee to follow its own procedures.
> The appellee is not required, or permitted, to give legal advice to its customers, but it does hold out to the public that money can be deposited and passed on in the way Rebecca Self attempted.

*Baker* v. *Bank of Northeast Arkansas*, 271 Ark. 948, 611 S.W.2d 783 (Ark. App. 1981).

We are not impressed by the bank's argument that Marlin had to offer testimony that the bank holds itself out as competent to carry out the wishes of its customers in issuing certificates of deposit. A bank can certainly be expected to exercise ordinary care in handling its customers'

business. We agree with the trial court's disposition of this argument:

> The Corning Bank, as well as any banking institution who receives money from its depositors in exchange for certificates of deposit, does indeed hold itself out to issue the Certificate of Deposit in such manner as to comply with the wishes of the depositor. In this instance, Melvin Rice clearly intended that at his death his brother was to have the proceeds and the bank by the testimony of its own employees and former employees admits that it attempted to comply with his wishes. Unfortunately, the bank simply did not comply with the provisions of Section 67-552, Arkansas Statutes Annotated, and it is not incumbent upon the depositor to insist that the provisions of that statute are complied with because the average layman has absolutely no knowledge of the statute. On the other hand, every banking institution should have knowledge of any relevant statutory provision regarding banks in the State of Arkansas.

The bank's other theories for reversal can be disposed of quickly. Inasmuch as the statute had been in force for years and had been construed in 1969 in *Cook* v. *Bevill, supra,* our present holding is in no way unfairly retroactive as to any vested right. As to the statute of frauds, the third-party beneficiary agreement did not have to be in writing, for the statute applies only to contracts incapable of being performed within a year. *Reed Oil Co.* v. *Cain,* 169 Ark. 309, 275 S.W. 333 (1925). Here the bank could of course have performed its contract had Melvin died before the expiration of a year.

The bank argues in its brief that it should not be liable twice for the same money. That argument misses the point. The bank has always been liable for the amount of the CD's, which represented money belonging not to the bank but the purchaser. The only question is whether the bank should pay for its negligence. If not, it gets off scot-free from carelessness that caused a substantial loss to Marlin Rice.

There is no double liability, only a single liability for negligence.

On cross appeal Marlin argues that the chancellor was wrong in holding that the statute of limitations bars Marlin's cause of action upon the CD issued more than five years before Melvin's death. That argument must be sustained. A statute of limitations does not begin to run until the plaintiff has a complete and present cause of action. *Hunter* v. *Connelly*, 247 Ark. 486, 446 S.W.2d 654 (1969). Marlin could not have asserted any cause of action upon the CD's until Melvin's death, for until then Melvin was free to change the alternative payee or to cash the CD's himself. Marlin also argues that the trial court should have allowed him more interest on his recovery, but his terse argument, unsupported by a clear statement of the facts or by any citation of authority, does not meet his burden of showing error.

Affirmed on direct appeal, reversed on cross appeal as to the amount of the bond disallowed by the trial court.

ADKISSON, C.J., not participating.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. I do not agree with the application of the law to the facts as stated in the majority opinion. I am at a loss to understand how this court could order a bank to pay the same money out twice when it is being held in trust for the rightful owner. The majority primarily anchor their opinion on Ark. Stat. Ann. § 67-552 (e) (Repl. 1980). In order to have a better understanding of this statute it is set out in pertinent part as follows:

. . . certificates of deposits may be held:

(a) If the person . . . purchasing such certificate of deposit, designates in writing to the banking institution that the . . . certificates of deposit shall be payable to the survivor or survivors of persons named in such

. . . certificates of deposit, then such . . . certificate of deposit and all additions thereto shall be the property of such persons as joint tenants with right of survivorship. Such . . . certificates of deposit may be paid to or on the order of any one of such persons during their lifetime, unless a contrary written designation is given to the banking institution, or to or on the order of any one of the survivors of them after the death of any one or more of them. The . . . purchase of the certificate of deposit in such form shall be conclusive evidence in any action or proceeding to which either the association or surviving party or parties is a party, of the intention of all of the parties to the . . . cetificate of deposit to vest title to such . . . certificate of deposit and the additions thereto in such survivor or survivors. No banking institution paying any survivor in accordance with the provisions of this section shall thereby be liable for any estate, inheritance or succession taxes which may be due the State.

(b) . . .

(c) . . .

(d) . . .

(e) If a person opening or holding an account or certificate of deposit shall execute and file with the banking institution a designation that on the death of the person named as holder, the account or certificate of deposit shall be paid to or held by another person or persons, the account or certificate of deposit and any balance thereof which exists from time to time, shall be held as payment on death account or certificate of deposit and unless otherwise agreed between the person or persons opening the account and the banking institution.

(f) Upon the death of the holder of the . . . certificate of deposit, the person or persons designated by him and who have survived him shall be the owners of the same (as joint tenants with right of survivorship if more than

one) and any payment made by the banking institution to any of such persons shall be a complete discharge of the banking institution as to the amount paid.

(g) . . .

(h) . . .

The majority rely upon subsection (e) above. This section does not make sense to me, as it is not even a complete sentence. No court could validly make a decision based upon this particular section.

The majority also cite the cases of *Cook* v. *Bevill,* 246 Ark. 805, 440 S.W.2d 570 (1969), and *McDonald* v. *Treat,* 268 Ark. 52, 593 S.W.2d 462 (1980), as authority for the opinion. In reading *Cook* I am of the opinion that it is a mixture of the old law and new law and the law relating to savings and loan associations and that of banking associations. The facts in *Cook* were that the decedent, E. J. Bryeans, purchased two certificates of deposit. One was in his name alone and the other in the name of "E. J. Bryeans or Andy Bevill." After Byreans' death the administrator and Bevill became involved in an argument which resulted in the lawsuit. The banker testified at the trial that Bryeans' intention was that Andy Bevill have the proceeds of the deposits made in the two names in the event of Bryean's death. The court then went into a discussion of Act 260 of 1937 and Act 444 of 1965, which are codified in Ark. Stat. Ann. § 67-521 (Repl. 1980). The court also considered Act 78 of 1965 which was codified as Ark. Stat. Ann. § 67-552 (Repl. 1966), and which now appears as Ark. Stat. Ann. § 67-521 (Repl. 1980). Both Act 260 of 1937, as amended, and Act 444 of 1965 deal with bank deposits in the name of two or more persons. Neither of these acts deals with certificates of deposits. The result of the holding in *Cook* is that there must be substantial compliance with the "designation in writing" requirements of Ark. Stat. Ann. § 67-552. The proceeds of the certificates of deposits were awarded Bevill because there had been no designation in writing authorizing payment of the certificates to Cook.

*In McDonald* v. *Treat,* supra, the decedent had a savings account in the savings and loan association. There was no document signed by the decedent as to how the account was to be paid upon her death. Nevertheless, the savings and loan paid the amount in the account to the decedent's niece. The niece was ordered to restore the money to the estate. There we also held that there must be a designation in writing that the account is payable to someone other than the purchaser before such may be used in lieu of a will to transfer money to a survivor. We said in *McDonald*: "Thus what the new statutes did was to correct the earlier state of uncertainty by requiring that persons who resort to payable-on-death accounts or certificates designate in writing, over their signatures, just who is to receive the money at their death."

Another case cited in the majority opinion is *Lovell* v. *Marianna Federal S. & L. Ass'n.,* 264 Ark. 99, 568 S.W.2d 38 (1978). In *Lovell,* we were also dealing with certificates of deposit. Originally the deposits had been placed in an account in the name of R. L. Lovell or Ann P. Lovell. R. L. Lovell purchased the certificates of deposit and he later took the certificates to the association and had the name of his son, Jimmy Lonnie Lovell, added and caused the name of his wife, Ann Lovell, to be stricken from the card. R. L. Lovell signed each of the certificates and his signature was witnessed by a bank employee. The association's employee pulled the ledger sheets, struck the name of Ann P. Lovell, inserted the name of Jimmy Lonnie Lovell and noted "changed 3-2-73." R. L. Lovell initialed each change and affixed his signature to the card. The trial court awarded the proceeds to the widow, Ann Lovell, in an action wherein the association had interpleaded the certificates. We reversed and held that the certificates belonged to Jimmy Lovell.

I see no need to discuss the statute of limitations in any manner whatsoever. It is clear and obvious that it is the duty of a depositor to designate in writing the party he wishes to receive the proceeds in the event of his death. The statute provides that upon the death of the holder of such certificates the person or persons designated who have survived shall be the owners and payment to any such persons "shall

be a complete discharge of the banking institution as to the amount paid." None of the cases quoted above involve double payment by the savings institution.

The certificates of deposit are still intact. If they were to be paid to Marlin Rice, then the court should pay them to Marlin Rice. On the other hand, if there was not a "designation in writing," then the proceeds should be paid to the estate of Melvin Rice. It is unconscionable, so far as I am concerned, to order the bank to pay twice. It is obviously the fault of Melvin Rice that he never completed his designation in writing. There is no dispute that both the decedent and the bank understood the certificates were to be paid to Marlin Rice upon the death of Melvin Rice. Even if the bank failed to do all they were supposed to do, there is no harm done. Had all the acts been completed which were necessary to effectuate the change, the certificates would have been the property of Marlin Rice. The estate would not have had the certificates if everything had been done to transfer them to Marlin. Equity treats as done that which ought to have been done. In my opinion, the evidence was sufficient to require a finding that failure to complete the transfer was the fault of the decedent. I do not see actionable negligence on the part of the appellant. Therefore, I cannot join the majority.