## A93A0686. TUCKER FEDERAL SAVINGS & LOAN ASSOCIATION v. RAWLINS.
(434 SE2d 94)

POPE, Chief Judge.

This is the second appearance of this case before this court. *Rawlins v. Campbell,* 199 Ga. App. 472 (405 SE2d 111) (1991). On January 3, 1989, plaintiff's brother, Elvin Rawlins ("Elvin") purchased a certificate of deposit ("the CD") in the amount of $100,000, using only his funds, from Tucker Federal Savings & Loan Association. Elvin purchased the CD from Tucker Federal employee Mary Harlan. On that day, Elvin requested that his nephew, Norris Campbell, Jr., be added to the certificate as a joint tenant. Both men signed the signature card for the certificate.

On March 20, 1989 Elvin returned with plaintiff, his brother, to Tucker Federal to change the joint tenants on the CD. He was assisted again that day by Ms. Harlan. Although the parties dispute whether Elvin or plaintiff instructed Ms. Harlan, it is undisputed that

she was informed that Elvin wanted his nephew's name removed from the CD and plaintiff's name added. Ms. Harlan told them that in order to remove his nephew's name she would have to "close" the CD and that there would be an interest penalty. Ms. Harlan suggested instead that plaintiff's name could be added to the account. Ms. Harlan attempted to add plaintiff's name to the CD as a joint tenant and plaintiff signed the signature card as the ostensible third joint tenant. Construing the evidence in the light most favorable to support the verdict, Ms. Harlan also told them that only the holder of the certificate would be able to withdraw the funds and they informed Ms. Harlan plaintiff would keep the CD in his possession. Ms. Harlan disputes this testimony.

Elvin died on Friday, June 2, 1989. Shortly after Tucker Federal opened on Monday, June 5, 1989, Campbell went there to withdraw the funds held in the CD. When he informed Ms. Harlan he did not have the CD, she asked him for identification and to sign an affidavit verifying that he was a certificate holder and the certificate was lost. After he completed the affidavit, Ms. Harlan gave Campbell the CD funds.

Later on June 5, plaintiff went to Tucker Federal accompanied by his son to determine what Tucker Federal would need to allow him to withdraw the funds held in the CD. Ms. Harlan informed plaintiff upon his arrival that the funds from that CD had been withdrawn earlier by Campbell.

On February 28, 1990, plaintiff filed a complaint for damages against Campbell and Tucker Federal. Campbell moved for summary judgment. The trial court granted his motion and this court affirmed the grant of summary judgment in Campbell's favor. This court held that plaintiff was not added to the CD as a joint tenant in compliance with OCGA § 7-1-814, and therefore could not recover against Campbell. *Rawlins*, 199 Ga. App. at 473. Plaintiff then proceeded against Tucker Federal. Plaintiff's action against Tucker Federal was tried by a jury who returned a verdict in favor of plaintiff in the amount of $104,000. Tucker Federal appeals.

1. Tucker Federal asserts the trial court erred by failing to grant its motion for directed verdict and later for j.n.o.v. because it has no contractual liability to plaintiff since it dispersed the CD funds to the only person who was properly a joint tenant on the CD with Elvin. Plaintiff insists that Tucker Federal's argument must fail because his claim against Tucker Federal is based in tort rather than contract. Plaintiff claims Tucker Federal owed a duty to Elvin and the plaintiff (1) to properly effectuate the change in ownership of the CD in the manner requested by Elvin; (2) to give them proper advice concerning how the CD funds could be obtained by the joint tenants; and (3) to follow the industry practice of requiring more than a lost certificate

affidavit to obtain the funds held in a certificate when the document evidencing the CD is lost. Plaintiff claims that the breach of this duty proximately caused his damages.

We must first decide what non-contractual duties, if any, a bank owes to its customer/depositor or a third-party beneficiary regarding alleged mishandling of certificates of deposit. The parties do not cite and we are aware of no Georgia decision that has specifically addressed this question. After reviewing decisions from other jurisdictions that have considered this issue, we hold that any financial institution which receives money from its customer in exchange for certificate(s) of deposit has a duty to issue and/or change the certificate in a manner that complies with the wishes of the customer, so long as the wishes of the customer are not contrary to any applicable law, and that the financial institution may be liable to the customer or a third-party beneficiary for mishandling the transaction, including improperly advising the customer how the certificate should be established or changed to comply with the wishes of the customer. See *Goodman v. Farmers &c. Bank*, 732 SW2d 866 (Ark. App. 1987); *Corning Bank v. Rice*, 645 SW2d 675 (Ark. 1983); cf. *Bank South v. Harrell*, 181 Ga. App. 64 (351 SE2d 263) (1986) (holding plaintiff's only claim against the defendant bank for improperly deleting her name as an authorized signature on a commercial account sounded in contract rather than tort). Every financial institution that issues certificates of deposit should be knowledgeable about the applicable laws governing such certificates and should exercise ordinary care in handling its customer's business so that the customer's wishes concerning such certificates can be fulfilled to the extent allowed by law.

2. We next consider whether the trial court committed reversible error by charging the jury on the provisions of OCGA §§ 7-1-812; 7-1-813; and 7-1-814. In support of this argument, Tucker Federal relies upon the language of OCGA § 7-1-811: "Code Sections 7-1-812 through 7-1-814, concerning beneficial ownership as between parties or as between parties and P.O.D. payees or beneficiaries of multiple-party accounts, are relevant only to controversies between those persons and their creditors and other successors and have no bearing on the power of withdrawal of these persons as determined by the terms of account contracts. Code Sections 7-1-816 through 7-1-821 govern the liability of financial institutions which make payments pursuant thereto and their setoff rights." The language of that Code section makes it clear that the provisions of OCGA §§ 7-1-812; 7-1-813; and 7-1-814 do not apply in disputes involving financial institutions and their customers concerning whether a party can properly withdraw funds in compliance with the terms of the applicable account contract. It would be absurd, however, to hold as Tucker Federal urges that these statutes, in particular OCGA § 7-1-814 which establishes

the procedure for making changes to multiple-party accounts, cannot be considered in determining whether there has been a breach of the duty owed by financial institutions to properly handle transactions for their customers. For this reason, Tucker Federal's argument that these Code sections should not have been charged because, pursuant to OCGA § 7-1-811, they are inapplicable to this dispute, must fail.

3. In a separate enumeration of error, Tucker Federal argues the trial court erred in charging the jury as follows: "I charge you that the terms of a multiple-party account can be changed only by one of two ways; number one, by closing the account and reopening it under different terms, or, two, by presentation to the financial institution of a modification agreement in a form satisfactory to the financial institution and signed by all parties with a present right of withdrawal.

"I charge you that the Plaintiff contends that the Defendant violated the above-stated law. . . .

"Such violation is called negligence per se or negligence as a matter of law. It is your duty to decide whether such violation took place or not."

This charge constitutes reversible error in this case and we remand for a new trial. Although OCGA § 7-1-814 is applicable to this case, a financial institution's duty to establish or change a customer's account in a manner that is consistent with the customer's wishes and the applicable law does not derive solely from that statute. Furthermore, whether Tucker Federal complied with the dictates of OCGA § 7-1-814 is not determinative of a breach of duty under the facts of this case. If Tucker Federal had properly added the plaintiff without removing Campbell from the CD, Tucker Federal could still be liable to plaintiff for misleading plaintiff about whether Campbell could withdraw the funds without the actual certificate. For these reasons, charging the jury that a failure to comply with the dictates of OCGA § 7-1-814 constitutes negligence per se is reversible error in this case.

4. We will address Tucker Federal's remaining enumeration of error because it is capable of repetition at retrial. We hold the trial court correctly excluded the testimony of Norris Campbell, Sr., and Mrs. I. O. White as the proffer of their testimony showed that neither of them was present at Tucker Federal on March 20, 1989 or had any knowledge of what Elvin or plaintiff told Ms. Harlan that day, the factual issue to be decided in this case. "Evidence which does not in any reasonable degree tend to establish the probability of the issues of fact in controversy is irrelevant and inadmissible." *Hicks v. State of Ga.*, 204 Ga. App. 232, 233 (418 SE2d 794) (1992); see OCGA § 24-2-1.

*Judgment reversed and case remanded with direction. Birdsong, P. J., and Andrews, J., concur.*

DECIDED JULY 1, 1993 —
RECONSIDERATION DENIED JULY 21, 1993.

*Walter C. Alford*, for appellant.
*Smith, Welch & Studdard, Ben W. Studdard III, J. Mark Brittain*, for appellee.