ONTAP PREMIUM QUALITY WATERS, INC., Plaintiff-Appellant, v. BANK OF NORTHERN ILLINOIS, N.A., f/k/a First National Bank of Waukegan, Defendant-Appellee.

Second District    No. 2—93—0593

Opinion filed May 17, 1994.

Semmelman & Bertucci, Ltd., of Lake Forest (David A. Semmelman, of counsel), for appellant.

Richards, Ralph, Eiden, Eckert & O'Donnell, Chartered, of Vernon Hills (Alan E. Richards, of counsel), for appellee.

JUSTICE DOYLE delivered the opinion of the court:

Plaintiff, OnTap Premium Quality Waters, Inc. (OnTap), filed a three-count second amended complaint in the circuit court of Lake County against defendant, Bank of Northern Illinois, N.A., f/k/a First National Bank of Waukegan, alleging breach of contract, wilful and wanton misconduct, and tortious interference with prospective economic advantage. Plaintiff timely appeals from an order of the circuit court denying plaintiff's motion to reconsider the dismissal with prejudice of the wilful and wanton and tortious interference counts. Having chosen to stand on the breach of contract count, which was subject to an earlier dismissal with leave to amend, plaintiff also appeals from the dismissal with prejudice of that count.

Plaintiff raises the following issues: (1) whether its second amended complaint stated a cause of action for breach of contract; (2) whether its second amended complaint stated a cause of action for wilful and wanton misconduct; (3) whether its second amended complaint stated a cause of action for tortious interference with prospective business advantage; (4) whether the trial court erred in

dismissing with prejudice the wilful and wanton and tortious interference counts; and (5) whether the trial court erred in striking an affidavit and refusing to consider other documents attached to plaintiff's motion for reconsideration.

The dispute in this case arises from a commercial lending relationship between plaintiff and defendant. In its second amended complaint, plaintiff alleged that it was in the business of leasing and servicing water coolers and filtration systems to businesses in the Chicago metropolitan area. Defendant, who was plaintiff's largest secured creditor, provided plaintiff with its sole source of financing through a loan guaranteed by the United States Small Business Administration (SBA) and equipment lease financing transaction basis loans secured by plaintiff's receivables. According to its complaint, plaintiff is currently involved in bankruptcy proceedings.

In or around March 1986, plaintiff sought a line of credit, concurrently depositing approximately $50,000 into a commercial checking account. Because plaintiff was a start-up company with no credit history, defendant was unwilling to extend to plaintiff a traditional line of credit. The parties instead entered into a lending relationship based on the discounting of the water cooler leases entered into by plaintiff (lease discount financing).

Defendant thereafter assisted plaintiff in obtaining an SBA guaranteed loan. Defendant told the SBA that it had $2 million available to loan plaintiff under its lease discount program. Defendant represented to the SBA that it would continue the lease discount financing for the entire term of an SBA loan, provided plaintiff continued to submit leases from credit-worthy businesses. After hearing defendant's representation, the SBA agreed to guarantee a $200,000 loan to plaintiff, which was to be repaid over seven years.

In March 1988, defendant placed a $100,000 ceiling on the amount plaintiff could borrow under the lease discount financing. This was the first time plaintiff had been informed of any such limitation. Because plaintiff had already met or exceeded this amount, defendant effectively cut off plaintiff's financing.

Defendant, however, offered to lend plaintiff up to $200,000 of lease discount financing, if plaintiff would agree to the following:

"a. double the amount of the life insurance pledged as security for the Lease Discount Financing;

b. submit to and pay for a semi-annual audit which included a physical inspection of every water cooler (over 250 coolers at 200 locations throughout the Chicago metropolitan area); and

c. obtain additional equity financing."

In paragraph 7 of its second amended complaint, plaintiff alleged that:

"[it] obtained an additional $50,000 in equity, [*sic*] and agreed to submit to audits by the [defendant]. However, [plaintiff] informed [defendant] that it could not afford to pay for the audits, [*sic*] or the increased amount of life insurance. [Defendant] subsequently waived those conditions, and an agreement was formed to lend [plaintiff] up to $200,000 in Lease Discount Financing."

In count I of its complaint, plaintiff alleged that defendant's agreement to provide the lease discount financing up to a limit of $200,000 constituted an oral contract and that defendant breached the oral contract when it refused to allow further draws of the lease discount financing on or around March 1, 1989. At the time of defendant's breach, plaintiff had borrowed less than the $200,000 defendant had committed to lend.

Count II alleged wilful and wanton misconduct, and count III alleged tortious interference with prospective business advantage. Additional allegations relating to counts II and III will be recited in conjunction with our analysis of the issues relating to those counts.

Plaintiff's first three issues on appeal invoke familiar principles governing a section 2—615 motion to dismiss. (Ill. Rev. Stat. 1991, ch. 110, par. 2—615.) A section 2—615 motion to dismiss for failure to state a cause of action attacks the legal sufficiency of a complaint. (*Kolegas v. Heftel Broadcasting Corp.* (1992), 154 Ill. 2d 1, 8.) The relevant inquiry asks whether sufficient facts are contained in the pleadings which, if established, could entitle the plaintiff to relief. (*Kolegas*, 154 Ill. 2d at 9.) Moreover, a complaint should not be dismissed for failure to state a cause of action unless it clearly appears that no set of facts could be proved which would entitle the party to relief. (*Johnson v. George J. Ball, Inc.* (1993), 248 Ill. App. 3d 859, 863.) A court, however, is to interpret the allegations of the complaint in the light most favorable to the plaintiff (*Kolegas*, 154 Ill. 2d at 9; *Johnson*, 248 Ill. App. 3d at 863), and the court must accept as true all well-pleaded facts in the complaint and all reasonable inferences which can be drawn therefrom (*Kolegas*, 154 Ill. 2d at 8-9; *Geick v. Kay* (1992), 236 Ill. App. 3d 868, 873).

Plaintiff contends first that it pleaded sufficient facts in its second amended complaint to state a cause of action for breach of contract. Plaintiff maintains that although it did not allege that it accepted defendant's offer, it did allege in paragraph 7 a counteroffer modifying the conditions set forth previously and defendant's acceptance of the counteroffer. Defendant responds that count I did not allege facts sufficient to establish either an offer or an acceptance.

■ In order to plead properly a cause of action for breach of contract, plaintiff must have alleged the existence of a contract, per-

formance of all contractual conditions, facts of defendant's breach, and the existence of damages as a consequence thereof. (See *Sider v. Outboard Marine Corp.* (1987), 160 Ill. App. 3d 290, 299.) Allegations demonstrating the existence of an oral contract to lend money must contain facts indicating an offer, acceptance, and consideration. (*Wait v. First Midwest Bank/Danville* (1986), 142 Ill. App. 3d 703, 706.) Where a complaint alleging breach of contract fails to state essential allegations it is defective and its deficiency may not be remedied by liberal construction. *Allstate Insurance Co. v. Winnebago County Fair Association, Inc.* (1985), 131 Ill. App. 3d 225, 233.

■ It is well established that an acceptance requiring any modification or change of terms constitutes a rejection of an original offer and becomes a counteroffer that must be accepted by the original offeror before a valid contract is formed. (*D'Agostino v. Bank of Ravenswood* (1990), 205 Ill. App. 3d 898, 902.) Liberally construing the allegations of plaintiff's complaint, it is reasonable to infer that informing defendant that it could not afford to pay for the audits or the increased amount of life insurance but that it agreed to obtain additional equity and the audits constituted a counteroffer by plaintiff which varied the terms of defendant's original offer to provide up to $200,000 of lease discount financing. Therefore, in order to allege the existence of an oral contract to lend money, plaintiff must have set forth specific facts supporting defendant's acceptance of plaintiff's counteroffer. See *Disc Jockey Referral Network, Ltd. v. Ameritech Publishing* (1992), 230 Ill. App. 3d 908, 913.

■ We disagree with plaintiff's assertion that it pleaded sufficient facts to support defendant's acceptance of plaintiff's counteroffer. First, plaintiff's allegation in paragraph 7 that "an agreement was formed" states no more than a legal conclusion without any factual support. (See *Wait*, 142 Ill. App. 3d at 706 (stating that a contract "was entered" or that defendant accepted is merely a legal conclusion).) In the absence of supporting facts, the general allegations in plaintiff's complaint that a contract exists were a legal conclusion which may not be admitted as true by a motion to dismiss. See *Wait*, 142 Ill. App. 3d at 706.

Second, a liberal reading of plaintiff's allegation that defendant "subsequently waived" the conditions of its offer does not allege with the requisite degree of factual specificity that defendant accepted the terms of plaintiff's counteroffer. The allegation that defendant waived the conditions of its offer states no more than a legal conclusion. Moreover, reading this allegation as it relates to the law of waiver does not cure plaintiff's defective pleading because waiver of a condition is not an element essential to the existence of a contract.

(See II E. Farnsworth, Farnsworth on Contracts § 8.2, at 348 n.15 (1990) ("the law of conditions includes the concept of waiver, while that of offer and acceptance does not").) Even if we were to construe it in a more colloquial sense, the allegation is nevertheless unsupported by specific facts demonstrating defendant's acceptance. Accordingly, because plaintiff's second amended complaint failed to allege sufficient facts to support the existence of a contract, the trial court did not err in concluding that count I failed to state a cause of action for breach of contract.

Plaintiff contends next that it alleged sufficient ultimate facts in count II of its complaint to state a cause of action for wilful and wanton misconduct. The following additional allegations are relevant. Plaintiff alleged that because defendant viewed its relationship with plaintiff unfavorably, the directors of plaintiff decided to repay the lease discount financing loan in full. The directors proposed the formation of a leasing company which would pay off the lease discount loan and thereafter finance plaintiff's operations. The directors arranged to borrow the money personally from another lending institution.

Before the loan could be paid in full under the restructuring plan, defendant was "required to seek SBA approval to transfer its collateral to the Leasing Company." The SBA had subordinated its interest in plaintiff's receivables so as to enable defendant to secure the lease discount financing. Plaintiff alleged that not only was defendant required to obtain SBA approval to transfer its collateral, but it was prohibited from using that same collateral as additional security for the SBA loan without the SBA's prior written approval.

Plaintiff further alleged that, by undertaking the responsibility for communicating with the SBA, defendant owed plaintiff a duty to carry out its obligations with reasonable care and that defendant breached its duty by failing and then refusing to request properly the collateral transfer.

In its motion to dismiss, defendant maintained that plaintiff's complaint failed to allege the existence of a legally cognizable duty upon which to ground an action for wilful and wanton misconduct. Plaintiff argues on appeal that it alleged the existence of a legally cognizable statutory duty which obligated defendant to communicate a request to the SBA concerning the collateral to be transferred to the leasing company and that defendant had a common-law duty to exercise reasonable care. We will consider each of plaintiff's arguments in turn.

■ In order to state a legally cognizable cause of action, plaintiff's complaint must establish that defendant owed a duty of care, that de-

fendant breached that duty, and that an injury was proximately caused by the breach. (See *Curatola v. Village of Niles* (1993), 154 Ill. 2d 201, 207; *Smith v. Armor Plus Co.* (1993), 248 Ill. App. 3d 831, 839.) In addition to these required elements, a complaint for wilful and wanton misconduct must allege either a deliberate intention to harm or an utter indifference to, or conscious disregard for, the welfare of the plaintiff. (*Adkins v. Sarah Bush Lincoln Health Center* (1989), 129 Ill. 2d 497, 518; accord *Burke v. 12 Rothschilds's Liquor Mart, Inc.* (1992), 148 Ill. 2d 429, 448; *Scarano v. Town of Ela* (1988), 166 Ill. App. 3d 184, 187.) Duty is, of course, a prerequisite to any wilful and wanton cause of action (*Scarano*, 166 Ill. App. 3d at 187), and its existence is determined as an issue of law (*Scarano*, 166 Ill. App. 3d at 187).

Plaintiff maintains that the source of defendant's statutory duty to communicate a request to transfer the collateral resides in a Federal rule which regulates the administration of SBA loans. (See 13 C.F.R. § 120.201—1 (1992).) Defendant responds that nowhere contained within the Federal rule is there a duty which obligates the bank to communicate a request to the SBA covering the transfer of collateral. Moreover, the allegation that defendant was required to seek SBA approval to transfer its collateral to the leasing company is conclusional. The Federal regulation asserted as the basis of defendant's statutory duty provides:

"§ 120.201—1 Prior consent required.

The holder of the note shall not, without the prior written consent of the other participant:

(a) *Alteration.* Make or consent to any substantial alteration in the terms or conditions of any loan instrument. For the purpose of this paragraph, *substantial* includes, but is not limited to, increases in principal amount or interest rate or any action that benefits or confers a preference on the holder;

(b) *Release of Collateral.* Make or consent to releases of collateral having a cumulative value, as reasonably determined by the holder of the note, which is more than 20 percent of the original loan amount;

(c) *Accelerate Maturity.* Accelerate the maturity of the note;

(d) *Sue.* Sue upon any loan instrument;

(e) *Waive Claim.* Waive any claim against any borrower, guarantor, obligor or standby creditor arising out of any loan instrument;

(f) *Increase Amount of Prior Lien.* Increase the amount of any prior lien held by the Lender on property securing an SBA guaranteed loan." 13 C.F.R. § 120.201—1 (1992).

■ Following a review of the clear and unambiguous language of

the rule, we agree with defendant that nowhere within it is there an affirmative duty on defendant to communicate to the SBA plaintiff's request to transfer the collateral on the lease discount financing to the director's leasing company. Additionally, the provision is entirely devoid of any language to suggest that defendant should act as an intermediary between itself, the SBA, and the borrower. As noted by defendant, the purpose of this provision is to safeguard the SBA, as guarantor on the underlying loan, from being placed at an increased risk because of certain enumerated actions being taken by the lender. Accordingly, we conclude, as a matter of law, that count II of plaintiff's complaint fails to allege a legally cognizable statutory duty as a prerequisite for maintaining an action for wilful and wanton misconduct.

■ Plaintiff maintains further, however, that its complaint stated a common-law duty which required defendant to exercise reasonable care in the execution of obligations it owed to plaintiff. Plaintiff cites no Illinois authority, and we know of none, which imposed a common-law duty on a defendant under circumstances similar or analogous to the circumstances of this case.

Plaintiff's cited authority offers no support for its position. In *Wilder Binding Co. v. Oak Park Trust & Savings Bank* (1990), 135 Ill. 2d 121 (payment of forged checks under Uniform Commercial Code duty of care), and *IXI Laboratories, Inc. v. First Bank National Association* (Minn. Ct. App. 1992), 483 N.W.2d 84, defendant's duty of care was derived from State statutes and no issue of common-law duty was before those courts. Neither court even tangentially addressed the existence of the duty plaintiff urges before this court.

In *Corning Bank v. Rice* (1983), 278 Ark. 295, 645 S.W.2d 675, the court's statement that a bank can be expected to exercise ordinary care in handling its customer's business was a response to a defendant bank's contention that a beneficiary of a certificate of deposit was required to offer testimony demonstrating that the bank was competent to effectuate the wishes of its customers. No such contention was raised in the present case. Moreover, the case did not hold, nor did it suggest in *dicta*, that a bank was under a common-law duty to exercise reasonable care with respect to the factual scenario alleged in plaintiff's complaint.

In the only case cited by plaintiff that touches on the issue of a common-law duty, *First Federal Savings & Loan Association v. Caudle* (Ala. 1982), 425 So. 2d 1050, 1052, the court held that while a bank was under no duty to help a customer procure a Federal loan, once it voluntarily agreed to assist, it was required to act with due care. (425 So. 2d at 1052.) *Caudle*, however, is readily distinguishable

from the present case. There the issue before the court was whether a statement made by a lender's agent to prospective home buyers that they had been approved for an FHA loan, when, in fact, they had not, was actionable. The question of liability turned on a theory of negligent misrepresentation and not on whether a bank owed a plaintiff a common-law duty to communicate a request to transfer collateral. Accordingly, because no Illinois court has recognized the duty plaintiff urges before this court and it has provided no relevant authority to establish the existence of such a common-law duty, we conclude that the trial court did not err in dismissing count II of plaintiff's second amended complaint.

■ Plaintiff contends next that count III of its complaint stated a cause of action for tortious interference with prospective business advantage. In count III of its complaint plaintiff seeks to hold defendant liable for "failing and refusing to properly communicate to the SBA the request to transfer its collateral position." Plaintiff claims that defendant's failure and refusal to comply with its request interfered with its business expectancy with the leasing company, which was formed by plaintiff's directors for financial restructuring purposes.

In order to state a cause of action for tortious interference with a prospective business advantage, a plaintiff must establish (1) his reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference. (*Fellhauer v. City of Geneva* (1991), 142 Ill. 2d 495, 511.) Additionally, Illinois courts require that a tortious interference claim be supported by allegations that the defendant acted toward a third party. *Du Page Aviation Corp., Flight Services, Inc. v. Du Page Airport Authority* (1992), 229 Ill. App. 3d 793, 804; *Willcutts v. Galesburg Clinic Association* (1990), 201 Ill. App. 3d 847, 851; *Galinski v. Kessler* (1985), 134 Ill. App. 3d 602, 607; see also 45 Am. Jur. 2d *Interference* § 50 (1969).

It is unnecessary to reach the merits of plaintiff's contentions on this issue because our review of the complaint reveals no allegations to support the requirement that plaintiff allege interference directed toward a third party. Although neither party has specially addressed the issue, this court, in determining the propriety of the dismissal of a complaint, is concerned only with questions of law presented by the pleadings and dismissal will be upheld on any basis found in the record. (*In re Marriage of Wilson* (1990), 193 Ill. App. 3d 473, 477-78.)

Plaintiff's allegations merely establish that defendant's action in failing or refusing to communicate arose from the direct relationship between plaintiff and defendant. The complaint is devoid of any allegation that defendant directed any action which purposefully caused the lease company not to enter into a business relationship with plaintiff.

Furthermore, even if we were to read the complaint as alleging an action directed toward the lease company, the allegations suggest that the lease company was no more than the collective alter ego of plaintiff's directors. In paragraph 18 of its complaint, which was incorporated as part of the interference count, plaintiff alleged that because of its deteriorating relationship with defendant, plaintiff's directors decided to repay the lease discount financing in full and proposed forming a leasing company to pay off the loan. Plaintiff alleges further that "the directors arranged with a different bank to personally borrow the money needed to accomplish these objectives." A reasonable inference to be drawn from these allegations is that plaintiff's directors, who personally borrowed money to fund the refinance, would be the principals in the newly formed leasing company. The lease company, therefore, is merely a vehicle for effectuating the financial restructuring. Accordingly, any alleged interference by defendant directed toward the lease company would in essence be no more than an action directed against plaintiff from doing business with itself. Such an allegation, in our opinion, fails to meet the requirement that a plaintiff must allege an interference between plaintiff and a third party. (*Cf. Eisenbach v. Esformes* (1991), 221 Ill. App. 3d 440, 444 (no interference between plaintiff and third party where defendant had control over operations of third-party entity).) Accordingly, we conclude that the trial court properly dismissed count III of plaintiff's second amended complaint.

Plaintiff contends next that the trial court abused its discretion when it dismissed with prejudice counts II and III of plaintiff's second amended complaint. A complaint is properly dismissed with prejudice only where the plaintiff is entitled to no relief on the facts alleged. (*Swanson v. Board of Police Commissioners* (1990), 197 Ill. App. 3d 592, 609.) If, by amendment, the plaintiff can state a cause of action, a case should not be dismissed with prejudice on the pleadings. (*Bowe v. Abbott Laboratories, Inc.* (1992), 240 Ill. App. 3d 382, 389.) It remains, however, within the trial court's sound discretion whether to allow amendment of the pleadings or to terminate finally the litigation. (*Plocar v. Dunkin' Donuts of America, Inc.* (1981), 103 Ill. App. 3d 740, 750.) The trial court's decision constitutes reversible error only if there has been an abuse of discretion. (*Plocar*, 103 Ill.

App. 3d at 750.) We conclude that the trial court did not abuse its discretion in dismissing with prejudice counts II and III of plaintiff's second amended complaint.

Plaintiff was afforded three opportunities to plead sufficient facts necessary to state a cause of action for wilful and wanton misconduct. (See *Plocar*, 103 Ill. App. 3d at 750.) A review of the original complaint, amended complaint, and second amended complaint reveals that this count remained substantively unchanged through the entire course of pleading. Additionally, the factual basis of defendant's alleged underlying duty to communicate remained unchanged from the amended complaint to the second amended complaint.

The trial court further afforded plaintiff two opportunities to allege facts sufficient to state a cause of action for tortious interference with prospective business advantage. The allegations in its amended complaint and second amended complaint related to the interference claim are identical. Moreover, the relevant facts underlying plaintiff's entire claim remained substantively unchanged. Based on the foregoing circumstances, it would not be unreasonable for the trial court to conclude that plaintiff, upon being allowed an opportunity to amend, would still be unable to allege sufficient facts entitling it to relief. (See *In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 1127.) Accordingly, we perceive no abuse of discretion.

■ Plaintiff finally contends that the trial court erred when it struck an expert affidavit and copy of the SBA loan servicing standards submitted in conjunction with its motion to reconsider the dismissal of its second amended complaint. Plaintiff maintains initially that the trial court improperly based its dismissal on a factual defense, thus constituting reversible error. Plaintiff argues further, however, that if this court determines that it was proper for the trial court to consider defendant's factual defense, the trial court improperly excluded defendant's expert's affidavit and a copy of SBA loan servicing standards. We find plaintiff's final contention without merit.

In the reconsideration hearing, the court stated that it dismissed plaintiff's complaint because it failed to state a cause of action as a matter of law. The court reiterated to plaintiff that its complaint did not state a cause of action and that it would be improper under section 2—615 to file an affidavit in conjunction with such a motion. The court further stated that it assumed the facts stated in the complaint were true, not the legal conclusions, and that it made its determination based on the facts alleged.

Furthermore, plaintiff points to nothing in the record to establish its assertion that the trial court premised its dismissal ruling on an

alleged factual defense. Moreover, because plaintiff has provided no transcript for the hearing on defendant's motion to dismiss plaintiff's second amended complaint, this court will further presume that the trial court entered its order in conformity with the law. (See *Foutch v. O'Bryant* (1984), 99 Ill. 2d 389, 392.) Accordingly, we find no error on the record before us.

For the foregoing reasons, we affirm the orders of the circuit court of Lake County dismissing with prejudice all three counts of plaintiff's second amended complaint.

Affirmed.

McLAREN and QUETSCH, JJ., concur.