A00A0740. WACHOVIA BANK OF GEORGIA, N.A. v. REYNOLDS et al.

(533 SE2d 743)

McMurray, Senior Appellate Judge.

The evidence reflects that appellee-plaintiff Frances B. Reynolds purchased a certificate of deposit ("CD") in the amount of $64,000 from a branch of the Wachovia Bank of Georgia, N.A. ("Wachovia" or "the bank") for her younger brother, appellee-plaintiff Bernard S. Bailey, Jr., age 73, as his attorney-in-fact. In making the purchase, Reynolds did not provide Wachovia Bailey's address and told the bank: "Everything pertaining to him comes to my address." Wachovia's service representative asked Reynolds if she had a power of attorney but did not request a copy of it. Wachovia, in turn, issued Reynolds an initial deposit receipt listing "Bernard S. Bailey, Jr. by Frances B. Reynolds, P.O.A." as the bank's customers. Thereafter, Wachovia opened Bailey's CD account in his name alone and sent everything pertaining to the account to Bailey directly based on his existing customer profile as one of the bank's credit card customers.

On the date his CD matured, Bailey presented his renewal notice to bank personnel at Wachovia and asked to withdraw his entire account in cash, explaining only that "[he had] a special reason[ ]" for the large withdrawal. After confirming his identity by photocopy of his driver's license and that he was the owner of the funds, Wachovia honored his demand, giving him $66,722 in a white canvass bag and 14¢ to put in his pocket. Several days later, Reynolds went to Wachovia to renew a CD which belonged to her. There she

learned that Bailey had withdrawn his money. Later, when she confronted her brother about such withdrawal at his apartment, Bailey told her that he had asked a maintenance man to hide his money in the attic of his apartment, paying the man $20 to do so. Reynolds' grandson, her son-in-law, and a detective subsequently searched the attic but found nothing.

Reynolds and Bailey filed a complaint for damages against Wachovia, later amended, alleging that Wachovia negligently established, handled, and redeemed Bailey's CD. Prior to trial, the superior court denied Wachovia's motion to dismiss upon the claim that Reynolds as attorney-in-fact for Bailey "is not the real party in interest and may not legally prosecute this action in her own name." At trial, the superior court denied Wachovia's motion for directed verdict and renewed motion for directed verdict. Wachovia appeals from the judgment on the jury's verdict in the amount of $66,722.14, plus prejudgment interest and attorney fees.[1] *Held*:

1. Wachovia enumerates that the superior court erred in denying its motions for directed verdict, contending that: (a) its duty of care extended to Bailey alone as its sole depositor-customer and the principal for whom Reynolds acted as agent in establishing his CD account; (b) Bailey's damages resulted from an unforeseeable intervening criminal act of a third party foreclosing recovery against Wachovia; and (c) there was no evidence that Bailey was entitled to OCGA § 13-6-11 attorney fees for bad faith. We disagree.

(a) *Cause of Action*. This case illustrates the importance of attention to detail in following applicable business practices and procedures. While Wachovia focuses on the duties owed when the CD was withdrawn in asserting that its duty of care was to Bailey alone, it ignores the obligations and duties owed when Reynolds originally set up the CD.

> [A]ny financial institution which receives money from its customer in exchange for certificate(s) of deposit has a duty to issue and/or change the certificate in a manner that complies with the wishes of the customer, so long as the wishes of the customer are not contrary to any applicable law, and that the financial institution may be liable to the customer or a third-party beneficiary for mishandling the transaction, including improperly advising the customer how the certificate should be established or changed to comply with the wishes of the customer.[2]

---

[1] The jury returned a verdict totaling $95,598.34.

[2] (Citations omitted.) *Tucker Fed. Sav. &c. Assn. v. Rawlins*, 209 Ga. App. 649, 651 (1) (434 SE2d 94).

Although Reynolds did not specify that Bailey was mentally incapacitated in opening his account at Wachovia, she nonetheless titled the account "Bernard S. Bailey, Jr. by Frances B. Reynolds P.O.A." on the line denominated, "Customer Name(s)," on the initial deposit slip created when the account was opened. This constituted at least some evidence of Reynolds' status as a bank customer to whom the bank owed a duty of care in addition to Bailey. Even were this not the case and pretermitting Wachovia's arguments based on the law of agency,[3] we conclude that where one acts for another by power of attorney suggesting possible incapacity or other special circumstance, as here, a bank's customer[4] must be deemed inclusive of the depositor and the attorney-in-fact who acts as the depositor/principal's agent.

There also is evidence of record showing that Wachovia breached its duty to comply with the wishes of Bailey and Reynolds as bank customers under *Tucker Fed.* In particular, although there is evidence that Reynolds signed a signature card upon opening the account, Wachovia was unable to locate and produce such a card at trial, and its personnel never looked at the card before allowing Bailey to withdraw the large sum in cash. Additionally, Reynolds opened the account with a check representing her brother's life savings signed by her as power of attorney and showing her address. Reynolds did not give her brother's address and told the bank to send everything relating to the account to her address — this to ensure that Bailey, whose affairs had been managed by her husband as conservator until his death and which she thereafter managed under power of attorney, would be financially secure in the event of her death. Further, Wachovia's Vice President and Private Banking Manager testified that normally Wachovia's bank records would show that the account was opened by power of attorney and show the address as specifically requested. A banking expert agreed, testifying that Wachovia violated reasonable banking practices in a number of ways, among them, opening or titling the CD in violation of its own standard operating procedures. "A directed verdict is proper only '[i]f there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall

---

[3] Wachovia argues that the instructions Reynolds gave it as to Bailey's CD account were immaterial in that " '[n]otice to the agent of any matter connected with his agency shall be notice to the principal.' OCGA § 10-6-58." Wachovia further argues that it was obligated to deliver the funds in Bailey's CD account on his demand under OCGA § 10-6-27 (" 'A principal may follow his money deposited by an agent in the latter's name and recover the same wherever found, unless the rights of innocent third persons shall have intervened.' OCGA § 10-6-27.").

[4] This is not inconsistent "within the law's broad definition of 'customer.' [OCGA § 11-4-104 (a) (5) (amended 1996)]. . . ." 1977 Op. Atty. Gen. 77-16.

demand a particular verdict.' OCGA § 9-11-50 (a)."[5] Whether there is conflict in the evidence is a question which the court must determine viewing the evidence in the light most favorable to the party opposing the motion for directed verdict using an "any evidence" standard of review.[6]

Based on the evidence in the record showing that Wachovia breached the duty it owed Bailey and Reynolds as customers under *Tucker Fed.*, the superior court correctly denied Wachovia's motions for directed verdict.

(b) *Intervening Criminal Act.* The superior court did not err in denying Wachovia's motions for directed verdict on the ground that plaintiffs' damages resulted from the unforeseeable intervening criminal act of a third party.

> An intervening criminal act of a third party, without which the injury would not have occurred, will be treated as the proximate cause of the injury thus breaking the causal connection between the defendants' negligence and the injury unless the criminal act was a reasonably foreseeable consequence of the defendants' conduct.[7]

To conclude that the intervening criminal act in the case sub judice was unforeseeable as a matter of law is not possible. Bailey's CD account was established by power of attorney with special instructions indicating potential incapacity in the depositor. This was sufficient to constitute some evidence of Bailey's vulnerability to criminal activity if not assisted in withdrawing or otherwise handling the funds deposited in his CD account.

(c) *OCGA § 13-6-11 Attorney Fees.* Neither did the superior court err in denying Wachovia's motions for directed verdict as to attorney fees under OCGA § 13-6-11 for bad faith. Contrary to expert testimony as to reasonable banking practices, Wachovia opened Bailey's CD account in his name alone not annotating its records to reflect that the account was established pursuant to a power of attorney or otherwise noting special circumstances. Further, the evidence reflected that Wachovia failed to maintain a signature card on the account. Additionally, although Reynolds directed that the bank

---

[5] *Vickery Ins. Agency v. Chambers*, 215 Ga. App. 48, 50 (449 SE2d 885).

[6] *Dept. of Human Resources v. Thomas*, 217 Ga. App. 174, 175 (1) (456 SE2d 724).

[7] (Citations and punctuation omitted.) *Alexander v. Sportslife*, 232 Ga. App. 538, 540 (2) (502 SE2d 280). See also *Ballenger Paving Co. v. Gaines,* 231 Ga. App. 565, 569 (1) (a) (499 SE2d 722) ("If the original negligent actor reasonably could have anticipated or foreseen the intervening act and its consequences, then the intervening act of negligence will not relieve the original actor from liability for the consequences resulting from the intervening act. That is a jury question.") (citations and punctuation omitted).

direct all mailings pertaining to the account to her address, Wachovia sent the same to Bailey, not providing her copies thereof.[8]

2. Wachovia also enumerates that the superior court erred in failing to charge that an agent may not dispute his principal's title under OCGA § 10-6-27 and that an agent has no right of action on contracts made for his principal under OCGA § 10-6-82.

The superior court properly declined to give these charges. In both instances, Wachovia failed to state the ground upon which it objected, thereby failing to preserve these claims of error on appeal.[9] In light of our disposition of Division 1 (a), we need not address Wachovia's claim that the failure to give its charges on agency, as requested, "materially harmed the defendant requiring reversal of the judgment below."[10]

*Judgment affirmed. Johnson, C. J., and Phipps, J., concur.*

DECIDED APRIL 12, 2000 —
RECONSIDERATION DENIED MAY 12, 2000 

*Fulcher, Hagler, Reed, Hanks & Harper, James W. Purcell, David P. Dekle*, for appellant.

*Hull, Towill, Norman, Barrett & Salley, Shannon G. Lanier, David E. Hudson*, for appellees.

*Long, Aldridge & Norman, W. Stell Huie*, amicus curiae.

---

[8] In particular, Reynolds was unequivocal in telling Wachovia: "Everything pertaining to him comes to my address."

[9] *Allstate Ins. Co. v. Justice*, 229 Ga. App. 137, 140 (3) (493 SE2d 532).

[10] See id.